**Russell BURLEW, Plaintiff–Appellant,**

v.

**EATON CORPORATION,
Defendant–Appellee.**

**No. 87–3090.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 30, 1988.
Decided March 3, 1989.

E. Campion Kersten, Kersten & McKinnon, Milwaukee, Wis., for plaintiff-appellant.

David B. Kern, Quarles & Brady, Milwaukee, Wis., for defendant-appellee.

Before CUMMINGS, FLAUM and KANNE, Circuit Judges.

FLAUM, Circuit Judge.

Plaintiff–Appellant Russell Burlew brought this action against his former employer, Eaton Corporation ("Eaton"), alleging both non-willful and willful age discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, *et seq.* The allegations arose out of Eaton's termination of Burlew's employment pursuant to a reduction in force (RIF) which had eliminated Burlew's position. Burlew was 59 years old at the time he was fired. The parties stipulated to the dismissal of the non-willful count on statute of limitations grounds, and the remaining willful discrimination claim was tried to a jury.[1]

The jury found that Eaton had violated the ADEA but that the violation was not willful. The trial judge denied Burlew's motion for judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial, and entered a judgment dismissing the action. On appeal, Burlew asserts that, under the particular instructions given by the trial court regarding intent to discriminate, the jury had to find willful age discrimination in order to find any age discrimination at all, and thus the trial judge erred in denying the motion for JNOV, or alternatively, the trial judge erred in not granting a new trial on the basis of inconsistent verdicts. Because we find that the jury's answers to the special verdict questions cannot be reconciled, we reverse.

## I.

This case raises thorny questions about the role of "discriminatory intent" in an age discrimination suit brought under the ADEA. It will not be necessary to answer all of those questions in order to resolve the issue on appeal. However, we will outline the troublesome area in order to place Burlew's argument in context.

The ADEA sets up a two-tier liability scheme. Section 623 constitutes the first tier and provides, in part, as follows:

It shall be unlawful for an employer—

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; ...

29 U.S.C. § 623. Violation of this section, without additional evidence of willfulness, would constitute non-willful age discrimination and would subject the employer to payment of damages.

Section 626(b) provides for the second tier of liability. That section subjects the employer to double damages for willful violations.[2] The Supreme Court has held that the standard for determining if a violation was willful is whether "the employer knew or showed reckless disregard as to whether its conduct was prohibited by the ADEA." *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 126, 105 S.Ct. 613, 624, 83 L.Ed.2d 523 (1985); *see also McLaughlin v. Richland Shoe Co.,* — U.S. ——, 108 S.Ct. 1677, 1681–82, 100 L.Ed.2d 115 (1988).

Operation of the two-tier liability scheme is exemplified by *Thurston.* In that case, Trans World Airlines, Inc. (TWA) had adopted a policy which allowed pilots who were disqualified from serving in that ca-

---

**1.** Section 7(e) of the ADEA, 29 U.S.C. § 626(e), incorporates § 6(a) of the Portal–to–Portal Act, 29 U.S.C. § 255(a), which in turn provides for a 2–year limitation period for non-willful violations and a 3–year limitation period for willful violations.

**2.** Section 7(b) of the ADEA incorporates § 16(b) of the Fair Labor Standards Act (FLSA), which,

in turn, mandates that an employer who violates the FLSA shall be liable to the employee in the amount of lost and/or unpaid wages *"and in an additional equal amount as liquidated damages."* 29 U.S.C. § 216(b) (emphasis added). Section 7(b) of the ADEA limits recovery of liquidated damages to cases of willful violations only.

pacity for reasons other than age to automatically transfer to the position of flight engineer but did not allow pilots who were disqualified because of age (*i.e.*, were mandatorily retired at age 60 from serving as pilots) to automatically transfer. Instead, 60–year–old pilots were required to obtain flight engineer status through bidding procedures. The Supreme Court held that the TWA policy discriminated against the protected pilots [3] on the basis of age and therefore violated the ADEA. The Court further held, however, that TWA, whose officials had in good faith sought legal advice and consulted with representatives of the pilots' union, did not act willfully—*i.e.*, with knowledge that or in reckless disregard as to whether the policy violated the ADEA.

In setting the standard for willfulness as knowledge or reckless disregard of a violation—and in rejecting a less stringent standard of mere awareness that the ADEA was "in the picture"—the *Thurston* Court emphasized that virtually all employers are aware of the ADEA and its potential applicability. Thus, the Court stated, a lesser standard "would result in an award of double damages in almost every case." 469 U.S. at 128, 106 S.Ct. at 625. Such a result, the Court found, would be contrary to the intent of Congress. *Id.*

Various courts have noted that while the knowledge or reckless disregard standard is relatively easy to apply in cases such as

*Thurston,* where the challenged employer action consists of the adoption of an employment policy, the willfulness standard is difficult to apply in cases that involve a discrete employment decision directed at an individual. *See, e.g., Cooper v. Asplundh Tree Expert Co.*, 836 F.2d 1544, 1548–52 (10th Cir.1988); *Lindsey v. American Cast Iron Pipe Co.*, 810 F.2d 1094, 1099 (11th Cir.1987); *Dreyer v. Arco Chemical Co.*, 801 F.2d 651, 656 (3d Cir.1986), *cert. denied*, 480 U.S. 906, 107 S.Ct. 1348, 94 L.Ed. 2d 519 (1987). The reasons for the difficulty are as follows. In a *Thurston*-type case, the factfinder can determine whether the plan or policy at issue is discriminatory without any inquiry into the defendant's state of mind. After the initial finding of discrimination, the factfinder can move on to the question of willfulness. However, to establish tier one liability in the latter type of case—generally referred to as a "disparate treatment" case [4]—an inquiry into the defendant's motive is required:

[The plaintiff] must prove not that age was the sole factor motivating the employer to discharge him [or her] but that age was a "determining factor," in the sense that he [or she] would not have been discharged "but for" [the] employer's motive to discriminate against him [or her] because of his [or her] age.

*La Montagne v. American Convenience Products, Inc.*, 750 F.2d 1405, 1409 (7th

---

**3.** Section 631(a) provides that the protected class is limited to "individuals who are at least 40 years of age but less than 70 years of age." 29 U.S.C. § 631(a).

**4.** *Thurston* has been referred to as a disparate impact case, *see Lindsey*, 810 F.2d at 1099, in the sense that the employer action consisted of adoption of a policy rather than "a decision directed at an individual, such as termination or demotion." *Dreyer*, 801 F.2d at 656. The latter type of case is referred to as a disparate treatment case. *Id.*

We note that *Thurston* was not acutally a disparate impact case. As we said in *Metz v. Transit Mix, Inc.*, 828 F.2d 1202 (7th Cir.1987): The disparate impact mode of analysis, first applied in Title VII cases, permits a plaintiff to recover for "employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *International*

*Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 n. 15, 97 S.Ct. 1843, 1855 n. 15, 52 L.Ed.2d 396 ... (1977); *see also Griggs v. Duke Power Co.*, 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 ... (1971) (finding as violative those employment practices that are "fair in form, but discriminatory in operation").

*Id.* at 1204 n. 4. In *Thurston*, the TWA policy was not facially neutral. Rather, the Court found it to be discriminatory on its face, and as such the case might be characterized as a disparate treatment case.

Nevertheless, the courts have generally distinguished *Thurston* from "disparate treatment" cases. For ease of discussion, we, too, will use the term "disparate treatment" to distinguish cases involving a discrete employment decision directed at an individual from *Thurston*-type cases involving an employer-adopted plan or policy.

Cir.1984) (quoting *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1019 (1st Cir.1979)); *see also Kephart v. Institute of Gas Technology,* 630 F.2d 1217, 1222 (7th Cir.1980), *cert. denied,* 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981); *Golomb v. Prudential Ins. Co. of America,* 688 F.2d 547, 551–52 and n. 2 (7th Cir.1982).

This standard—that age was a determining factor—does not in itself require a finding as to defendant's state of mind, for in law there is a distinction between motive and intent. "Motive is what prompts a person to act, or fail to act. Intent refers only to the state of mind with which the act is done or omitted." *Black's Law Dictionary* at 727 (5th ed. 1979). Indeed, in 1981 we stated:

> Congress, in our opinion, intended that liability under the ADEA could be established without any showing as to the defendant's state of mind....
>
> ....
>
> ... Unlike race discrimination, age discrimination may simply arise from an *unconscious* application of stereotyped notions of ability rather than from a deliberate desire to remove older employees from the workforce....

*Syvock v. Milwaukee Boiler Manufacturing Co.,* 665 F.2d 149, 154–55 (7th Cir. 1981), *overruled in part by Coston v. Plitt Theatres, Inc.,* 860 F.2d 834 (7th Cir.1988) (emphasis in original).[5] In subsequent cases we have adhered to the proposition that age discrimination "may be subtle and even unconscious." *See La Montagne,* 750 F.2d at 1410; *see also Oxman v. WLS–TV,* 846 F.2d 448, 453 (7th Cir.1988); *Matthews v. Allis–Chalmers,* 769 F.2d 1215, 1220 (7th Cir.1985) (Flaum, J., concurring), *majority overruled by Oxman,* 846 F.2d at 455–56.

Moreover, an ADEA plaintiff can establish tier one liability without presenting any evidence as to the employer's state of mind, by using the burden-shifting method of proof adopted from *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a Title VII case. As adopted to ADEA reduction-in-force cases, the indirect method requires the plaintiff to first prove a prima facie case of discrimination by showing that: (1) plaintiff was in the protected class; (2) plaintiff's job performance met the employer's legitimate expectations; (3) plaintiff was discharged; and (4) others who were not in the protected class were treated more favorably than plaintiff. *Oxman,* 846 F.2d at 455. Once the plaintiff establishes this prima facie case, the burden shifts to the employer to articulate a non-discriminatory reason for the discharge. If the employer meets this burden of production, the plaintiff must then prove that the proffered reasons are a pretext. This can be done by showing that the employer's decision to discharge plaintiff was, more likely than not, motivated by discriminatory reasons or that the employer's proffered explanations are not credible. *Id.* at 456.

However, despite our adherence to the position that age discrimination can be unconsciously motivated, and the fact that a plaintiff can establish liability without presenting evidence of the defendant's state of mind, we have at the same time, relying on Title VII cases, come to equate a finding that age was a "determining factor" in the employer's decision with a finding that the employer *intentionally* discriminated. Although Title VII does not set up a two-tier liability scheme,[6] we and

---

**5.** *Syvock* had defined the standard for willfulness to be that the employer "knew or should have known" that its actions violated the ADEA. In light of *McLaughlin v. Richland Shoe Co.,* —— U.S. ——, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988), which held that a *Syvock*-type standard was inconsistent with the *Thurston* "knowledge or reckless disregard" standard, we overruled the use of the *Syvock* willfulness standard. *Coston,* 860 F.2d at 836. However, the *Syvock* analysis regarding unconscious discrimination as a basis for non-willful discrimination appears

to still be good law. *See Oxman, La Montagne,* and *Matthews,* cited in text.

**6.** The civil enforcement section of Title VII provides, in part:

> (g) If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to,

the other circuits have relied upon Title VII cases, primarily *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1980), to hold that in an ADEA disparate treatment case, the plaintiff's ultimate burden is to prove that the defendant intentionally discriminated.[7] *See Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1364 (7th Cir.1988); *Williams v. Williams Electronics, Inc.*, 856 F.2d 920, 923 (7th Cir.1988); *Oxman*, 846 F.2d at 453; *Metz v. Transit Mix, Inc.*, 828 F.2d 1202, 1204 (majority), and 1214–16 (Easterbrook, J., dissenting) (7th Cir.1987); *Graefenhain v. Pabst Brewing Co.*, 827 F.2d 13, 18 (7th Cir.1987); *Bechold v. IGW Systems, Inc.*, 817 F.2d 1282, 1285 (7th Cir.1987).

Therein lies the problem. If a finding that age was a "determining factor" in the employer's decision—*i.e.*, a finding that establishes tier one liability—is tantamount to a finding of intentional discrimination, and the employer knew that age discrimination is prohibited by the ADEA (as virtually all employers know), the result would be a finding of willfulness in almost every disparate treatment case. Perhaps that is as it should be, given the nature of a disparate treatment case. *See Lindsey*, 810 F.2d at 1100 (jury's finding of intentional discrimination coupled with defendant's knowledge that ADEA prohibited age discrimination precluded finding of good faith); *Spanier v. Morrison's Management Services, Inc.*, 822 F.2d 975, 981 (11th Cir.1987) (Hill, J., concurring) ("In studying

the ADEA and cases brought under it, I have concluded that where a defendant loses a typical [disparate treatment] case, the employer has necessarily been found guilty of a willful violation of the ADEA, and liquidated damages are required. Disparate impact cases such as *Thurston* are the only conceivable exception."). On the other hand, as stated above, the *Thurston* Court indicated that Congress did not intend that a finding of willfulness should automatically flow from every finding of age discrimination.[8]

Having sketched the problem area, we now turn to the facts of Burlew's case.

## II.

At trial, Burlew presented his case using the burden-shifting method of proof. At the close of evidence, the judge instructed the jury as follows:

Now Mr. Burlew has sought to meet his burden by presenting evidence that age was a determining factor in his discharge. This requires that he prove the following. One, that he was over 40 years of age, which everyone agrees. Two, that he was adversely affected by Eaton's reduction in the work force. Everyone agrees on that. Three, that he was qualified to assume another position at the time of his discharge. And four, that Eaton intended to discriminate in making the decision to terminate his employment.

reinstatement or hiring of employees, with or without back pay ..., or any other equitable relief as the court deems appropriate....
42 U.S.C. § 2000e–5(g). We note that this section specifically bases liability on intentional discrimination and does not distinguish between willful and non-willful violations.

7. *Burdine* concerned the application of the burden-shifting method of proof in a Title VII case. The Supreme Court held that after the plaintiff establishes a prima facie case, the burden of production, not persuasion, shifts to the defendant—*i.e.*, the defendant must articulate a nondiscriminatory reason for its action. The Court stated, "[t]he ultimate burden of persuading the trier of fact that the defendant *intentionally discriminated* against the plaintiff remains at all times with the plaintiff." 450 U.S. at 253, 101 S.Ct. at 1093 (emphasis added).

8. In an effort to resolve this problem, the Third Circuit has adopted a more stringent standard of willfulness than the *Thurston* standard, requiring a showing of "outrageousness" for awarding liquidated damages. *See Dreyer*, 801 F.2d at 657–58. The Tenth Circuit has adopted yet another standard, holding:

[A] basic finding of liability under the Act requires that age be at least one of possibly several "determinative factors" in the employer's conduct; for a willful violation to exist in a disparate treatment claim, a factfinder must find that age was the *predominant* factor in the employer's decision.

*Cooper*, 836 F.2d at 1551 (10th Cir.1988) (emphasis in original).

. . . .

. . . In deciding whether Mr. Burlew has established the fourth element above, that is whether Eaton intended to discriminate in making the decision to terminate him, you must decide whether the reasons stated by Eaton for having terminated his employment were a pretext for what was in truth a discriminatory purpose.

. . . .

Now we go on to a different concept and that's a willful violation. . . . If Mr. Burlew has convinced you again by a preponderance of the evidence that at the time Eaton terminated him Eaton either knew it was violating the law or showed a reckless disregard for whether its termination violated the law, then Eaton willfully violated the Age Discrimination in Employment Act and you should answer the question "yes."

The jury returned a special verdict finding: (1) that age was a determining factor in Eaton's decision to terminate Burlew; and (2) that Eaton did not willfully violate the ADEA.

We initially note that the instructions as to the third and fourth element—that Burlew was qualified to assume another position and that Eaton intended to discriminate—are incorrect under current law. It appears that those instructions were drawn from *Matthews v. Allis–Chalmers*, 769 F.2d 1215 (7th Cir.1985), which was controlling precedent at the time of the trial. We subsequently overruled *Matthews* in *Oxman*, 846 F.2d at 456.[9]

However, Burlew does not challenge the instructions on appeal. Rather, he argues that under these particular instructions

which specifically required a finding that Eaton intended to discriminate, and in light of the fact that Eaton admitted at trial that it knew the ADEA prohibited age discrimination, the jury had to find willful age discrimination in order to find any age discrimination at all. It is important to note that Burlew does *not* argue that a finding of willfulness should automatically flow from a finding that age was a determining factor in the employer's decision coupled with an admission as to the employer's knowledge, and we therefore leave to another day resolution of the larger problem outlined above. He argues only that these specific instructions, combined with the undisputed fact of Eaton's knowledge, mandate a finding of willfulness or a finding of no discrimination at all. Thus, he argues that the trial judge erred in denying his motion for JNOV or, alternatively, in not granting a new trial on the basis of inconsistent verdicts.

Turning to the question of inconsistent verdicts, we are required to reconcile the verdicts if possible. "Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way. For a search for one possible view of the case which will make the jury's finding inconsistent results in a collision with the Seventh Amendment." *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798 (1962). The question in this case is whether a reasonable juror necessarily would have understood the term "intent," as used in the instructions, to mean a conscious, deliberate state of mind. If so, such a finding—coupled with Eaton's admission that it knew age discrimination is

---

**9.** Following the lead of the Fifth Circuit in *Williams v. General Motors Corp.*, 656 F.2d 120, 129 (5th Cir.1981), *Matthews* had adapted the *McDonnell Douglas* burden-shifting method of proof to fit RIF cases. The fourth element of the *McDonnell Douglas* formula is that the employer sought a replacement for the plaintiff. Since in a RIF situation, the plaintiff's position is eliminated, that element is not applicable. *Matthews* refashioned the fourth element by requiring the plaintiff to "produc[e] circumstantial or direct evidence from which a factfinder might reasonably conclude that the employer

intended to discriminate in making the employment decision in issue." *Matthews*, 769 F.2d at 1217. *Matthews* also refashioned the third element to conform with the RIF situation by requiring the plaintiff to show that "he was qualified to assume another position at the time of the discharge or demotion." *Id.* We overruled *Matthews*, finding that the new formulation obviated the central purpose of the burden-shifting method, *i.e.*, to permit a plaintiff to prevail without presenting any evidence of discriminatory intent.

prohibited by the ADEA—conflicts with a finding of no willfulness.

Examining the instructions, we find that the trial judge equated a finding of intent to discriminate with a finding that Eaton's proffered explanations were a pretext. The judge stated, "[i]n deciding whether Mr. Burlew has established ... [that] Eaton intended to discriminate ..., you must decide whether the reasons stated by Eaton for having terminated his employment were a pretext...." This instruction—to the extent quoted—does not, in itself, dictate an understanding of intent to mean a conscious, deliberate state of mind. As we stated in *Syvock:*

> It is not the case, as the plaintiff contends, that because the jury might reasonably have inferred that [defendant's] post-hoc justifications for its actions were pretextual, the evidence necessarily compels the inference that the defendant acted consciously.
>
> Age discrimination resulting from unconscious stereotyping of an older person's abilities violates the ADEA although it may not have occurred with the state of mind necessary to a finding of willfulness. Yet it is likely that an employer will attempt to offer a legitimate reason for its actions at trial to avoid liability in the first instance. Because the defendant's trial explanation is not believed does not mean that its original actions were in fact consciously discriminatory.

665 F.2d at 156–57. Eaton relies on the above passage from *Syvock* to argue that the judge's instructions did not necessarily preclude a finding that Eaton's true motivation was unconscious stereotyping of ability. Therefore, Eaton argues, the jury's finding of no willfulness did not render the verdicts fatally inconsistent.

Eaton is correct that under *Syvock* a finding of pretext, standing alone, would not necessarily mandate a finding of conscious discrimination.[10] However, the cru-

cial question in this case is: *for what* did the jury find the proffered explanation to be a pretext? Many of the ADEA cases simply say that the plaintiff must show that the proffered explanation was a pretext *for discrimination.* That formulation does not preclude the possibility of unconscious discrimination. In this case, however, the trial judge instructed the jury that Burlew must establish that Eaton's proffered explanation was "a pretext *for what was in truth a discriminatory purpose.*" We find that we cannot reconcile this formulation of pretext with a finding of unconscious discrimination. While one might engage in a semantic discussion, drawing distinctions among the various meanings of the word "purpose,"—which include, according to *Black's* and other dictionaries, "reason," "intended or desired result," "end," "aim," "goal," "intention," "design," "object," "plan," and "project," and as an adverb, "deliberately"—none of the synonyms leads us to believe that the jury would have understood the phrase "in truth a discrimnatory purpose" to include unconscious motivation. Accordingly, we find the verdicts to be fatally inconsistent.

## III.

For the reasons stated in this opinion, the judgment of the district court is VACATED, and the case is REMANDED for a new trial on the issues of both liability and damages.

---

**10.** We reiterate that we are not here addressing the larger issue of whether a plaintiff who has established discrimination using the burden-shifting method of proof has necessarily established conscious, intentional discrimination. We are focusing solely on the particular instructions in this case.