David P. WHEELER, Plaintiff–Appellee,

v.

**McKINLEY ENTERPRISES d/b/a Braden's Wholesale Furniture d/b/a Fowler's Fine Furniture, Defendant–Appellant.**

No. 89–6442.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 10, 1990.
Decided July 5, 1991.

Perry H. Windle, III, David A. Burkhalter, II (argued), Burkhalter & Associates, Knoxville, Tenn., for plaintiff-appellee.

Marty McDonald, Charles G. Taylor, III (argued), McDonald, Levy & Taylor, Knoxville, Tenn., for defendant-appellant.

Before NELSON, Circuit Judge, WELLFORD, Senior Circuit Judge,* and JOINER, Senior District Judge.**

DAVID A. NELSON, Circuit Judge.

This is an appeal from a judgment entered on a verdict for the plaintiff in an action brought under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* Defendant McKinley Enterprises, the owner of a retail furniture chain known as Braden's, was found to have violated the Act in discharging the 62–year–old manager of one of its stores. The jury awarded the plaintiff $58,616.56 in back pay and $29,697.69 in front pay, but the court ordered a remittitur of $16,770.56 on the back pay portion of the verdict. Based on a finding by the jury that the violation was willful, the judgment also included penalty damages (characterized by statute as "liquidated damages") in an amount equal to the back pay award, as adjusted.

Before the case was sent to the jury, Braden's requested the court to instruct the jury that an employer's reasonable, good faith belief that its conduct was not in violation of the Act is a defense to the finding of a willful violation. The trial judge denied the request. We conclude, for this and other reasons, that the instructions as given did not adequately inform the jury of all relevant considerations. Accordingly, and because we find that the verdict of the jury was against the manifest weight of the evidence, we shall remand the case for a new trial.

I

A

Plaintiff David P. Wheeler was hired by a company called Fowler's Furniture in 1960. He was still working there in February of 1985, at which time Fowler's was purchased by Braden's.

Braden's retained all but seven of Fowler's employees. Mr. Wheeler, then almost 60 years of age, was one of those kept on the payroll. Of the seven employees whom the new owners failed to retain, six were either Fowler's officers or members of its board of directors.

McKinley Braden, who owned Braden's with his son Gary, suffered a heart attack in August of 1985. While he was recuperating—a period when Gary Braden was exercising a larger voice in the conduct of the business—the manager of Braden's Gay Street Store in Knoxville, Tennessee, resigned. Because Mr. Wheeler had some prior experience in furniture store management, he was chosen to fill the vacancy.

Gary and McKinley Braden both testified that in January and February of 1986 they called Mr. Wheeler's attention to cash shortages at his store. The shortages were said to total $885. In March of 1986,

* The Honorable Harry W. Wellford assumed senior status on January 21, 1991.

** The Honorable Charles W. Joiner, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

they said, a bank deposit bag containing between $7,000 and $8,000 was stolen. Mr. Wheeler admitted that he had placed the deposit bag in a file cabinet in full view of a number of employees—and under the company's established policy, he should have put it in the night depository at a nearby bank. A few weeks later, Ed Stewart, a shipping clerk at Mr. Wheeler's store, was caught stealing $35,000 worth of merchandise. The Bradens blamed Mr. Wheeler for these losses.

In the spring of 1986 the Bradens allegedly became dissatisfied with the way Mr. Wheeler displayed and priced merchandise. Gary Braden testified that Wheeler priced furniture according to his own system, ignoring Braden's pricing policy; that he separated pieces of furniture that should have been displayed together; and that he displayed damaged merchandise.

In July of 1986, Gary Braden testified, he summoned Mr. Wheeler to his office and fired him. The reasons for this action were summarized as follows in a memorandum prepared contemporaneously:

"7/16/86 8 am

Today Phil Wheeler was fired because of his neglect of specific orders on keeping the Gay Street store merchandised properly. Last Wed. I was in the Gay St. store and on every floor found lamps in the floor Ashley end table group 570 and Broyhill group 3220 and many others scattered on all floors. (Nothing in groups.) Sofa groups without chairs. Bedroom suites specifically American drew 076 Cherrygrove mirrors in floor. Beds not set up. A (mess).

Also problem with merchandise not tagged!"

Mr. Wheeler returned to Gary Braden's office later that morning and asked for his job back. Braden relented, as evidenced by a second memorandum:

"7/16/86 10 am

Phil was dismissed however he pleaded with me to give him another chance. I told him today is it and all of the problems we have been facing regarding store maintenance need to never occur again. He said he would take care of everything immediately.

Also his behavior regarding the Ed Stewart situation was discussed. He said his handling of the store was wrong. He also said he did not have any excuses for leaving the store the night of the last theft with David Higdon and a key. At the time David at the time was a suspect from the 1st theft and Phil was told specifically not to trust David H. period. He agreed and I gave in again and gave him one more chance."

McKinley Braden testified that he did not approve of his son's giving Mr. Wheeler a second chance.

Although Mr. Wheeler's performance improved for about a month, according to Gary Braden, it soon slipped back. Braden claimed that Wheeler kept too many samples in the showroom, with the result that no stock could be found when customers went to the warehouse to pick up their purchases. Mr. Wheeler also continued to follow his own pricing method, resulting in embarrassing price differentials with Braden's other locations. Mr. Wheeler admitted that there was a problem in this regard.

In June of 1987 Gary Braden placed the following memorandum in Mr. Wheeler's personnel file:

"6/1/87

Phil was told today to get his store in shape. I had visited store last Thurs. and floors were ragged.

Also Phil had double & triple & more times sampled the same items which was killing us in our inv. system. I told him to never do that again & to return items that were in road dept. to Braden's that he had over sampled. He said he would.

Phil's store is a mess."

Mr. Wheeler's performance still failed to improve, according to the Bradens, so they again decided to fire him. Gary Braden announced this decision to Mr. Wheeler on August 3, 1987. Braden's personnel director, Tim Harris, was also present, according to both Harris and Braden. Both men testified that Mr. Wheeler was told he was being discharged because of continuing deficiencies in the way he displayed and

tagged merchandise, the way he priced furniture, and the careless way he treated inventory. Gary Braden wrote a memorandum to this effect and placed it in the personnel file. At trial, both Gary and McKinley Braden testified that they believed Mr. Wheeler's poor performance constituted a valid reason for firing him.

Gary Braden directed his office manager to prepare a separation notice, as required by the Tennessee Department of Employment Security. The notice, unlike the memorandum, said that Mr. Wheeler was separated because of a "lack of work." Mr. Braden testified that this was done so that Mr. Wheeler would qualify for unemployment benefits more quickly and have an easier time finding a new job.

Mr. Wheeler returned to Braden's a few days later and asked McKinley Braden for a letter of recommendation. McKinley Braden agreed to give him one. When Mr. Wheeler returned to pick up the letter, he also requested and received a letter of recommendation from Gary Braden. The letters praised Mr. Wheeler as a "good worker" who would be an "asset to any company." McKinley Braden's letter also implied that Mr. Wheeler had been dismissed because Braden's had "to [sic] many furniture store managers."

On the same day that he obtained the letters of recommendation, Mr. Wheeler filed age discrimination charges against Braden's with the Tennessee Human Rights Commission. He subsequently brought the present action in the United States District Court for the Eastern District of Tennessee. In due course the case went to trial before a jury of six.

The evidence presented by Mr. Wheeler at trial conflicted in certain ways with that presented by the defendant. Mr. Wheeler testified that Gary Braden never discussed any cash shortages with him in 1986, and he introduced a Braden's income statement that failed to show the cash shortages. He further testified that Gary Braden never criticized the appearance of his store, and he denied that Gary Braden complained in July of 1986 about how he displayed or tagged his merchandise.

Tim Harris was not present at the termination meeting in August of 1987, according to Mr. Wheeler, and Wheeler denied that his performance was criticized at that meeting. Gary Braden was said to have told him he was being fired because Braden's wanted to replace him with a "younger man" and because Braden's wanted "new young blood in that store to turn it around...." Mr. Wheeler also testified that Gary Braden had referred to him as "old man Wheeler" on at least one occasion. James Chancey, a former Braden's salesman, testified that he understood he had been hired because Gary Braden wanted to bring fresh, young blood into the store.

### B

The jury awarded Mr. Wheeler $58,616.56 in back pay, notwithstanding that an expert witness called by Wheeler himself had testified that the wage loss came to $41,846. Braden's moved for judgment notwithstanding the verdict or, in the alternative, for a new trial. The judge denied the motion, but ordered a remittitur to conform the award to the plaintiff's evidence. Pursuant to 29 U.S.C. § 626(b), and based on a finding by the jury that the defendant's violation of the statute was "willful," judgment was entered for twice the amount of the back pay of $41,846; the award of front pay in the additional amount of $29,697.69 was not doubled.

On appeal, Braden's asks us to hold that the district court should have entered judgment n.o.v. or, failing that, should have ordered a new trial. We are also asked to hold that the district court committed prejudicial error in refusing to give the requested jury instruction on the willfulness issue.

### II

### A

■ Viewing the evidence in the light most favorable to Mr. Wheeler, and drawing all inferences in his favor, we conclude that Braden's was not entitled to a judg-

ment as a matter of law. See *Chappell v. GTE Products Corp.*, 803 F.2d 261, 265 (6th Cir.1986), *cert. denied*, 480 U.S. 919, 107 S.Ct. 1375, 94 L.Ed.2d 690 (1987) (judgment *n.o.v.* is only proper when the evidence is ·so strong that reasonable minds could not differ as to what the evidence showed).

To establish a violation of the Age Discrimination in Employment Act, Mr. Wheeler had only to prove that age was *a* determining factor in Braden's decision to fire him. *Id.* at 266. Braden's conceded that Mr. Wheeler established a *prima facie* case on this issue, and the question is whether the evidence was such the jury could only have found that the reasons offered by Braden's for the termination amounted to a pretext.

There were three ways in which Mr. Wheeler might have shown that Braden's stated reasons for firing him constituted a mere pretext: (1) by showing that the stated reasons had no basis in fact, (2) by showing that they were not the actual reasons, and (3) by showing that they were insufficient to explain the discharge. *Id.* (citation omitted). It was the second approach, primarily, that Mr. Wheeler sought to follow here.

Mr. Wheeler pointed in this connection to the evidence that Gary Braden said he wanted to replace Mr. Wheeler with a "younger man" and bring in "new young blood." He also pointed to the separation notice written by Gary Braden and to the letters of recommendation written by both Gary and McKinley Braden. Furthermore, he showed that he was replaced by a 35 year-old man with no known management experience.

The Bradens, of course, asserted that the manifold deficiencies in Mr. Wheeler's job performance were the real reason behind his discharge. They made a powerful case; presented with conflicting evidence, however, the jury chose to accept Mr. Wheeler's. Credibility determinations are for the jury. *Williams v. Caterpillar Tractor Co.*, 770 F.2d 47, 50 (6th Cir.1985).

**B**

Before we turn to the jury charge issue, it may be helpful for us to outline the "two-tiered liability scheme," as the Supreme Court has described it, created by Congress when it passed the statute under which this action was brought. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 128, 105 S.Ct. 613, 625, 83 L.Ed.2d 523 (1985).

■ The Age Discrimination in Employment Act (or "ADEA") makes it unlawful for an employer to discharge any individual because of such individual's age. 29 U.S.C. § 623(a)(1). Where multiple reasons have been advanced for a discharge, "the plaintiff may prevail if he establishes that 'but for' a discriminatory motive, the action would not have been taken." *Chappell*, 803 F.2d at 265, citing *Wilkins v. Eaton Corp.*, 790 F.2d 515, 520 (6th Cir.1986). A plaintiff can meet this burden, as we have seen, by proving that age was "a determining factor" in the employer's decision. *Chappell, id.*[1]

■ Where a plaintiff proves that he was discharged because of his age in violation of the ADEA, he is entitled to recover, at a minimum, any back pay lost as a proximate result of the violation. For certain violations, however, Congress authorized the recovery of punitive damages as well. The provisions of the ADEA, it is specified in 29 U.S.C. § 626(b), are to be "enforced in accordance with the powers, remedies, and procedures provided" in designated sections of the Fair Labor Standards Act ("FLSA")—and "[a]mounts owing to a person as a result of a violation of [the ADEA] shall be deemed to be unpaid

---

**1.** In *Chappell,* as in the case at bar, the plaintiff sought to show that age considerations played a direct part in the employer's decision to treat the plaintiff less favorably than it treated younger employees. Such cases are frequently referred to as "disparate treatment" cases, to distinguish them from cases in which an employment policy that is neutral on its face has a heavier impact on statutorily-protected employees than on others. Cases of the latter type are called "disparate impact" cases. *Trans World Airlines v. Thurston,* as we shall see, was a disparate treatment case, not a disparate impact case.

minimum wages or unpaid overtime compensation for purposes of [FLSA provisions codified at 29 U.S.C. §§ 216 and 217]." The FLSA provides that any employer who violates the minimum wage or overtime provisions of that statute shall be liable not only in the amount of the unpaid minimum wages or unpaid overtime compensation, but also "in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). And under the ADEA, as distinguished from the FLSA, such liquidated damages are "only" payable "in cases of *willful* violations ..." 29 U.S.C. § 626(b). (Emphasis supplied.)

The upshot of this strangely convoluted piece of drafting is that a person who has suffered a wage loss as a result of having been discharged in violation of the ADEA is entitled to judgment for his back pay (the first tier of damages),[2] and is entitled to judgment for liquidated damages in an equal amount (the second tier of damages) if—but only if—the ADEA violation was "willful."

 The courts have had some difficulty in finding a definition of "willfulness" that allows for the award of double damages where appropriate, but does not result in double damages being awarded as a matter of course whenever an employee is discharged or otherwise discriminated against because of his age. It is clear that Congress did not intend that double damages be awarded automatically whenever a violation of the ADEA occurs. See *Thurston*, 469 U.S. at 128 and n. 22, 105 S.Ct. at 625 and n. 22, *id.*, where the Court observed that Congress could hardly have intended to allow the recovery of liquidated damages "even if the employer acted reasonably and in complete 'good faith.'" It is less clear how Congress intended the courts to distinguish between cases where employees have been *willfully* discharged because of their age and cases where employees have been *non-willfully* discharged because of their age.

"An acceptable way" of articulating the distinction between willful and the non-willful conduct, the Supreme Court said in *Thurston*, is to categorize as "willful" those violations of the ADEA that occur where "the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." *Id.* at 128–129, 105 S.Ct. at 625. This was the standard that the Court of Appeals for the Second Circuit applied when the *Thurston* litigation was before it; see *Air Line Pilots Ass'n, Int'l v. Trans World Airlines, Inc.*, 713 F.2d 940, 956 (2d Cir.1983). Although this "reckless disregard" standard was said to be "reasonable," see 469 U.S. at 126, 105 S.Ct. at 624, the Second Circuit was held to have misapplied the standard under the particular facts presented in *Thurston*.

Very briefly, the employer in *Thurston* required its flight captains to leave the company's employ at the age of 60 if they could not obtain "flight engineer status" through prescribed bidding procedures. Flight captains who were displaced for any reason other than age, by contrast, did not have to resort to the bidding procedures. There was thus "direct evidence that the method of transfer available to a disqualified captain depends upon his age," the Supreme Court declared, and "TWA's transfer policy [was] discriminatory on its face." 469 U.S. at 121, 105 S.Ct. at 621. But although the plaintiffs' case was "based on discriminatory treatment," see 713 F.2d at 956, and although the statutory defenses that TWA sought to raise proved unavailing, the Supreme Court held as a matter of law that TWA's violation of the ADEA was not "willful" and did not justify a doubling of the back pay to which the plaintiffs were entitled. Applying the Second Circuit's "reckless disregard" standard to facts that had been established in summary judgment proceedings, the Supreme Court held that TWA's discriminatory treatment of its 60 year-old flight captains could not have been willful.

---

**2.** "Front pay" may be recoverable as well, but it cannot figure in the calculation of liquidated damages.

In *Cooper v. Asplundh Tree Expert Co.*, 836 F.2d 1544 (10th Cir.1988), an opinion issued three years after *Thurston*, the Court of Appeals for the Tenth Circuit noted that the *Thurston* standard is "particularly useful" in cases which, like *Thurston* itself, involve "a company-wide plan or policy that adversely [affects] a segment of the work force." *Id.* at 1549.[3] The *Thurston* standard is "less useful," the Tenth Circuit said, in disparate treatment cases where an employee alleges "intentional discrimination aimed specifically at him," *id.*, as opposed to disparate treatment cases where intentional discrimination is aimed at an entire class of persons.

Where intentional discrimination is aimed at the plaintiff as an individual and not as a member of a class identified in a company-wide plan or policy, *Cooper v. Asplundh Tree Expert Co.* teaches that the employer's decision cannot be found to have been "willful" without a finding that age was "the" predominant factor in the decision. 836 F.2d at 1551. This standard "preserves the Congressional intent to retain a two-tiered liability scheme," the Tenth Circuit explained, and avoids "the practical result permitting a willful violation [to be found] whenever liability is found in a disparate treatment case." *Cooper*, 836 F.2d at 1551.

In *Schrand v. Federal Pacific Elec. Co.*, 851 F.2d 152 (6th Cir.1988), our circuit adopted the Tenth Circuit's formulation. The plaintiff in *Schrand* had been discharged as a result of what he asserted was intentional age-based discrimination aimed specifically at him. A jury found that the employer had acted willfully, and the jury's award of back pay was therefore doubled. We reversed the judgment because of error in rulings on the admissibility of evidence. Although our holding did not turn on the jury instructions regarding

willfulness, we took the opportunity to comment on the instructions in order to provide guidance for a new trial. And we declared, in this context, that the jury ought to be told "that it could find the defendant's conduct willful *only* if age was *the* predominant factor in the decision to terminate the plaintiff." 851 F.2d at 158. (Emphasis supplied.)

The instructions given by the trial court in *Schrand* failed to make this critically important point. The trial court had given two willfulness instructions based on *Thurston*, and nothing else. The first such instruction told the jury that "[a] violation is willful when the defendant knew or showed reckless disregard to whether its conduct was prohibited by the Age Discrimination in Employment Act," while the second instruction said that "a violation is not willful when the defendant acts reasonably and in good faith." *Id.*

It was error, we said in *Schrand*, for the district court to have based its willfulness instruction "only" on *Thurston*. We did not disapprove the *Thurston* instructions, and we noted that the "good faith" instruction had been recognized in *Whitfield v. City of Knoxville*, 756 F.2d 455, 463 (6th Cir.1985), but we faulted the trial court for not making it clear to the jury that willfullness can be found *only* if "age was the predominant factor in the decision...."

Against this background we turn, at last, to the jury instructions given in the case at bar.

Unlike the instructions given by the trial court in *Schrand*, the instructions in the instant case did say, toward the end, that "in order for you to find that the defendant willfully discriminated against the plaintiff, in violation of the Age Discrimination in Employment Act, you must find by a preponderance of the evidence that

---

**3.** Because *Thurston* involved a company-wide policy, the Tenth Circuit spoke of the case as having arisen in an "adverse impact context." 836 F.2d at 1549. The policy that produced the adverse impact in *Thurston* was intentionally discriminatory, of course, rather than neutral on its face, so *Thurston* was not a "disparate impact" case in the conventional sense. Although our court has referred to *Thurston* as "a

disparate impact case," see *Schrand v. Federal Pacific Elec. Co.*, 851 F.2d 152, 158 (6th Cir. 1988), we construe this as a shorthand way of emphasizing that the discriminatory conduct at issue in *Thurston* represented the application of "a company-wide plan or policy." Accord: *Burlew v. Eaton Corp.*, 869 F.2d 1063, 1065 n. 4 (7th Cir.1989).

age was the predominant factor in the decision to discharge the plaintiff."

The jury was given absolutely no explanation of the significance of this isolated sentence, however—there was no description of the "two-tiered liability scheme" embodied in the ADEA, and the instructions failed to bring home to the jury, in terms that ordinary people could understand, what it was that the jury was supposed to determine before any award of back pay could be doubled.

At the outset of the charge, it is important to note, the jury was told in the clearest of terms that "the plaintiff must prove by a preponderance of the evidence that his age was one of the reasons for the defendant's discharge of him from his employment." The next sentence referred to the plaintiff's burden of proving that age was "a" determining factor in the discharge. The sentence after that, which outlined the issues to be decided, told the jury that if the plaintiff was discharged because of his age in violation of the Act, the jury would have to determine whether the violation was "willful."

In the material that followed, the jury was reminded time after time of its obligation to determine whether age was "a" determining factor in the discharge. At pages 12 and 13 of the transcript, for example, the jury was given this instruction:

"In order for you to find for the plaintiff, you must find from all of the evidence that the plaintiff's age was *a* determining factor in the decision of the defendant to discharge him; that is, the defendant would not have made its decision except for the plaintiff's age. However, the plaintiff's age may not be the only reason. The plaintiff's age must be *a* determining factor." (Emphasis supplied.)

At page 14, similarly, the jury was told that

"the plaintiff has the ultimate burden of proving that age was a determining factor in the employer's decision in order to establish liability. There can be more than one factor in the decision to discharge an employee. He is, neverthe-

less, entitled to recover if one such factor was his age. Age does not have to be the sole reason, but only a determinative factor in connection with the discharge."

It was not until page 18—following a discussion of back pay and front pay, but with no discussion of liquidated damages—that the jury was suddenly told that to find willful discrimination, it would have to find that age was "the predominant factor" in the discharge decision. The jury was never told what difference it would make if the defendant had acted willfully, and the significance of the definite article ("the" as opposed to "a") was not mentioned at all. Only a remarkably attentive juror could have noticed that in this one instance the court was speaking of "the predominant factor" rather than "a predominant factor." And a juror would have had to be clairvoyant to know why the definite article mattered.

The paragraph that came immediately after the district court's lone reference to age as "the" predominant factor said this:

"In determining whether the defendant's actions were wilful, it is not necessary for the plaintiff to show that the employer acted with specific intent to violate the Act or that the employer had knowledge of the implications of the Act. It will be sufficient if you find that the defendant was reckless in not knowing its actions would be governed by the Age Discrimination in Employment Act or that the defendant acted in reckless disregard of whether its actions were governed by the Age Discrimination in Employment Act. The defendant's actions must have been voluntary and intentional."

The jury was told nothing else on the subject of willfulness. The defendant had requested an instruction (Proposed Jury Instruction No. 12) that included the words "an employer may avoid a finding of willfulness by showing good faith and reasonable grounds for believing that it was not in violation of the Age Discrimination in Employment Act," but this instruction was not accepted by the court.

In the context of the charge actually given in this case, a good faith instruction might well have helped make it clear that the jury could not base a finding of willfulness on the conclusion that age had been "a" predominant factor in the discharge decision.[4] More importantly, however, the court should have explained to the jury why it was being asked to decide whether the defendant had acted "willfully"—and the court should have highlighted the distinction between "a predominant factor" and "the predominant factor," making it clear that the jury could find the defendant's conduct willful if age was "the" predominant factor but not if age was simply "a" predominate factor.

*Blackwell v. Sun Electric Corp.*, 696 F.2d 1176, 1181 (6th Cir.1983), teaches that jury instructions must adequately inform the jury of the relevant considerations and must provide a basis in law for aiding the jury in reaching a decision. Taken as a whole, the instructions given here did not meet this standard—and in our opinion the deficiency constituted plain error.[5]

■ Viewing the evidence as a whole, finally, we have serious reservations as to whether the jury's verdict on the threshold liability issue was in accordance with the manifest weight of the evidence. Our reservations are compounded by the fact that the jury awarded back pay in an amount 40% above the wage loss as calculated by the plaintiff's own expert. Accordingly, and noting that a new trial on the willfulness issue would almost certainly necessitate the presentation of evidence relevant to the question whether the statute was violated at all, we shall order a new trial on all issues.

The judgment is VACATED, and the case is REMANDED for proceedings not inconsistent with this opinion.

JOINER, Senior District Judge, concurring. I write briefly to explain my reasoning.

I believe the trial judge did his best to comply with our instruction in *Schrand v. Federal Pacific Electric Co.*, 851 F.2d 152 (6th Cir.1988). However, I believe that the submission of the instructions and the verdict form presented to the jury failed to adequately give clear directions to the jury, as pointed out by Judge Nelson, so that they could answer the questions submitted as the verdict in this case. In other words, the combination of the instructions and the special verdict forms would likely cause the confusion suggested by Judge Nelson.

The instructions are all drafted with an eye toward a general verdict.

> If the proof should fail to establish any essential element of the plaintiff's claim by a preponderance of the evidence, you must find for the defendant with respect to that claim.
>
> ....
>
> In order for you to find for the plaintiff, you must find from all of the evidence that the plaintiff's age was a determining factor in the decision of the defendant to discharge him; that is, the defendant would not have made its decision except for the plaintiff's age. However, the plaintiff's age may not be the only reason.
>
> ....
>
> [Y]ou may, but you need not, render a verdict in his favor.... If the plaintiff has failed to prove one or more of these facts, then you must find for the defendant.

---

4. A good faith instruction would also have been in harmony with the Supreme Court's recent decision in *Cheek v. United States,* — U.S. —, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991), a tax case where the Court noted that "the standard for the statutory willfulness requirement is the 'voluntary, intentional violation of a known legal duty.'" *Id.,* 111 S.Ct. at 610, citations omitted. The willfulness charge in the case at bar informed the jury that "[t]he defendant's actions must have been voluntary and intentional," but

failed to explain that these actions must have violated a known legal duty.

5. As Judge Joiner notes in his concurrence, the problem was magnified because the jury had no way of telling which instructions went with which of the various special verdict forms. The suggestions offered by Judge Joiner in this regard are most constructive; we agree with all of them.

. . . .

If you find that the plaintiff has proven these facts and that the defendant has not produced a reason other than age for discharge, then you must find for the plaintiff. If, on the other hand, the defendant has produced evidence of a reason other than age for discharging the plaintiff, you must find for the defendant unless. . . .

. . . .

He is, nevertheless, entitled to recover if one such factor was his age.

(Court's jury charge, Tr. at pp. 4, 12, 13, and 14). These and other like statements are scattered throughout the charge but the jury was never given a verdict form that allows it to find "for the plaintiff" or "for the defendant." The verdict is made up of discrete questions, like Question V,[1] which does not help the jury to know when certain instructions apply and when they do not.

As pointed out by Judge Nelson, the instruction required by *Schrand* and given by the trial judge is lost in a welter of instructions giving standards for finding for the plaintiff or for the defendant.

This opinion is not intended to criticize the judge for using interrogatories as a verdict form. In fact, special questions may be the best way of submitting a two-tiered case such as this one. The problem comes from not making clear which instructions apply to which questions, and in not helping the jury understand the standards for answering each question.

A special verdict requires that the trial judge make clear how the instructions apply. First, it is helpful to tell the jurors what questions they are going to have to answer. Second, instructions that apply to all questions should be so labeled. Third, certain questions require the application of special rules, and often require certain terms to be defined. Each question to be answered, and the special rules of law and definitions applicable thereto, should be discussed one at a time. It should be made clear which rules of law and definitions apply to which question to be answered. In this case, in order to make certain that the jury is not confused on the issue of willfulness (Question V), the instruction on willfulness should be given in context with the interrogatory. Finally, when a verdict form consisting of interrogatories is used, the instructions should give directions as to how to answer specific interrogatories, under the law, depending upon how the jury finds the facts. The language in the instructions that relate to, and call for, a general verdict is confusing and should be avoided.

Special questions help the jury solve discrete problems. They are a sound and effective method of submitting the case for decision but, when they are used, the trial judge must make certain that his instructions relate to the discrete questions and not to a general concept of "for the plaintiff" or "for the defendant."

---

[1] V. CHOOSE ONE: (NOTE: You should complete this section only if you have found in favor of the plaintiff against the defendant.)
__ We the jury find unanimously that the defendant's violation of the Age Discrimination in Employment Act was willful.

__ We the jury find unanimously that the defendant's violation of the Age Discrimination in Employment Act was not willful. (App. at 15).