**Dr. John Prel KELMENDI,**
**Plaintiff–Appellant,**

v.

**Randall PITTS, GBM Trucking, and State Farm Mutual Automobile Insurance Company, Defendants–Appellees.**

No. 99–2337.

United States Court of Appeals, Sixth Circuit.

March 20, 2001.

Before COLE and GILMAN, Circuit Judges; ALDRICH, District Judge.[*]

## OPINION

GILMAN, Circuit Judge.

This suit arises out of a motor vehicle accident allegedly caused by Randall Pitts, who was driving a GBM truck. Dr. John Prel Kelmendi, who was insured by State Farm, claims that he suffered serious bodily injuries as a result of the collision. The matter ultimately proceeded to trial by a jury, which returned a verdict for the defendants. Kelmendi now challenges that ruling. For the reasons set forth below, we AFFIRM the judgment of the district court.

## I. BACKGROUND

On the morning of July 25, 1994, Kelmendi was driving in the curb lane of westbound Outer Drive in Detroit, Michigan when a GBM tractor trailer driven by Pitts struck Kelmendi's car. Kelmendi claims that the truck, while traveling at approximately 25 miles per hour, made a sudden right-hand turn from the left lane, trapping Kelmendi's car between it and the curb. As a result, Kelmendi contends that his car was dragged a considerable distance by the truck, that he sustained serious bodily injuries, and that he was knocked unconscious. Kelmendi failed to complain of any injuries, however, when the police arrived at the scene to investigate the accident. Instead, he proceeded to his construction company's jobsite without seeking any medical treatment.

Later that same day, one of the construction company workers accidentally cut Kelmendi's wrist with a chain saw. It was only then that he sought medical attention. The doctor who sutured his wrist made no notes indicating that Kelmendi had complained of any problems besides the wrist wound. When Kelmendi returned the next week to have the stitches removed, however, he arrived on crutches and informed the doctor that he was suffering from neck, back, and knee pain due to the vehicular accident. He sought treatment in the ensuing months for a closed-head injury, frequent headaches and dizziness, severe traumatic nervous shock, and injuries to his neck, upper back, and legs. Kelmendi also claims that he

[*] The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

was unable to return to work because of the injuries he sustained in the accident.

After requesting Kelmendi to undergo an independent medical examination in October of 1995, State Farm suspended further insurance payments. The doctor who performed the exam found that Kelmendi had fully recovered from any injury that he may have suffered as a result of the accident, and that no further medical treatment, housekeeping services, or wage disability payments were necessary. By this time, State Farm had already paid approximately $50,000 to various medical providers and physical therapists from whom Kelmendi was seeking treatment.

On July 23, 1997, Kelmendi brought suit against Pitts and GBM for negligently causing the motor vehicle accident. He also asserted a claim against State Farm, alleging that it owed him benefits for medical expenses, housekeeping services, and wage loss pursuant to Michigan's no-fault insurance law. See Mich. Comp. Laws § 500.3101–.3179. The case was filed in federal district court based upon diversity of citizenship. Kelmendi claimed a total of $105 million in damages.

In October of 1999, the case proceeded to trial. Kelmendi was the first witness called to testify. He was questioned for three days about the accident and the damages that he was claiming. Kelmendi also presented evidence from three doctors who described the extent of his physical and mental ailments. Although there were two passengers in Kelmendi's car at the time of the accident, he did not call either of them as witnesses.

The only other person to testify about how the accident occurred was Pitts, whose version of what happened was substantially different than Kelmendi's. Pitts claimed that he had proceeded with due care, slowed down to three to five miles per hour, and used his four-way flashers and turn signal to indicate the "button hook" maneuver necessary to make the sharp turn into a factory entrance. Because Kelmendi suffered from chronic diseases associated with his back and neck dating back to the 1980s, and had sustained additional trauma in a 1998 automobile accident, the defense also presented two doctors who cast doubt on the scope and cause of Kelmendi's claimed injuries.

After deliberating for two hours, the jury returned a verdict, finding that Pitts and GBM had not been negligent in the accident and that Kelmendi had not been injured. Judgment was entered accordingly by the district court. Kelmendi now challenges that judgment in this pro se appeal.

## II. ANALYSIS

As an initial matter, we note that because Kelmendi filed this appeal without the assistance of counsel, the issues raised on appeal are not clearly defined. His briefs also fail to cite any legal authority in support of his arguments. Rather, he reargues the facts of his case without precise references to the record and makes unsubstantiated claims that defense counsel engaged in "distortion, outright lies," and a "coordinated campaign of character assassination." Giving him the benefit of the doubt, his appeal appears to raise three challenges for review. We will discuss them in turn.

### A. Sufficiency of the evidence

Kelmendi first contends that the jury's verdict was not supported by the weight of the evidence. When reviewing a civil jury verdict to determine whether the evidence is sufficient to support the judgment, we view the evidence in the light most favorable to the prevailing party. See Coal Res., Inc. v. Gulf & W. Indus., Inc., 865 F.2d 761, 767 (6th Cir.1989). The verdict, moreover, is entitled to considerable deference, see Adkins v. GAF Corp., 923 F.2d 1225, 1232 (6th Cir.1991), and

when presented with conflicting evidence, credibility determinations are properly left to the jury. *See Wheeler v. McKinley Enters.*, 937 F.2d 1158, 1162 (6th Cir.1991).

Kelmendi and Pitts provided conflicting testimony about how the accident occurred. Because Kelmendi failed to provide any corroborating evidence that would have supported his version of the events, the jury had to decide whom to believe. Here, the jurors chose to accept Pitts's explanation of the incident, and therefore found that neither Pitts nor GBM was responsible for the collision.

■ As for Kelmendi's alleged injuries, he was again unable to substantiate that he had in fact suffered any harm due to the accident. The police report that he introduced at trial indicated that there were no injuries at the scene. He was able to report to work immediately following the accident. The doctor who sutured his wrist from the chain-saw accident that same day had no notes suggesting that Kelmendi had complained of any other injuries. Moreover, Kelmendi admitted that he was already being treated for a variety of physical ailments, had filed a claim for disability from an incident in 1983, and suffered from depression, anxiety, and fatigue. The evidence, therefore, amply supported the jury's finding that Kelmendi had not suffered any harm attributable to the accident.

## B. Evidentiary rulings

The majority of Kelmendi's challenges involve various evidentiary rulings by the district court. He contends that the court erred in allowing the introduction of evidence relating to prior lawsuits in which he was a party, his deposition testimony from the present case, and medical records showing that his claimed ailments existed before the 1994 accident. The district court also erred, according to Kelmendi, in excluding certain evidence that he wished

to present at trial. During the pretrial conference, however, the district court reviewed much of the evidence that Kelmendi now questions, and his attorney affirmatively stated that she had no objections to the court's evidentiary rulings. A reading of the record, moreover, indicates that Kelmendi failed to object to any of these rulings during the trial itself.

■ Our review of the challenged evidentiary rulings is therefore limited to an examination for plain error that would result in a fundamental miscarriage of justice if not corrected. *See Finch v. Monumental Life Ins. Co.*, 820 F.2d 1426, 1432 (6th Cir.1987) (internal quotation and citation omitted) ("[T]he plain error exception to the contemporaneous objection rule is to be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.").

■ In the present case, it cannot be said that the district court's evidentiary rulings caused a miscarriage of justice. Much of the evidence that Kelmendi now objects to was introduced by his own counsel in questioning him on direct examination. Moreover, defense counsel had the right to question Kelmendi about his prior lawsuits and medical records to show that he had made inconsistent statements concerning his health and employment status. The earlier litigation demonstrated that he had filed previous disability claims for similar injuries and had attributed his absences from work to these other incidents. Medical records also showed that he suffered from various chronic ailments and had previously complained of these conditions, despite his testimony at trial that he was healthy and was not taking any medications prior to the accident.

Kelmendi also objects to defense counsel's questions on cross-examination about his lawsuits against the city of Detroit for false arrest and against the Catholic Archdiocese of Detroit for defamation. He con-

tends that the questions were asked solely to portray him as "unreasonably litigious" and to prejudice the jury against him. His own counsel, however, first brought up these lawsuits on direct examination.

Kelmendi further argues that the second deposition he gave in this case was supposed to be limited to inquiries concerning the closed-head injury that he allegedly suffered as a result of the accident. His counsel made this argument to the district court, but was unable to produce a court order or transcript indicating that the deposition was to be restricted in its scope. Moreover, Kelmendi's brief fails to cite any testimony at trial that came from this deposition. We therefore cannot say that the district court abused its discretion in overruling his objection on this issue.

██ Finally, Kelmendi protests the district court's pretrial decision that forbade him from showing the jury a six-inch scar on his back that resulted from his 1999 double-laminectomy surgery. Kelmendi, however, has failed to show that he ever renewed such a request during trial. Our review is therefore again limited to a "plain error" analysis. *See Finch,* 820 F.2d at 1432. The district court, moreover, allowed him to testify at great length about his physical injuries. Accordingly, we find no basis for the claim that the district court committed plain error regarding this issue.

## C. Unfair prejudice

Kelmendi's last claim is that he was denied a fair hearing because of alleged misconduct by counsel for the defendants. Specifically, he asserts that they engaged in "stonewalling" and "dirty tricks" and created a "false and misleading impression" of Kelmendi by portraying him as overly litigious and anti-Catholic, thereby prejudicing the jury against him.

"Attorney misconduct that results in prejudice may serve as a basis for a new

trial, ... [but][t]he burden of showing harmful prejudice rests on the party seeking the new trial." *Clarksville–Montgomery County Sch. Sys. v. U.S. Gypsum Co.,* 925 F.2d 993, 1002 (6th Cir.1991) (internal citations omitted). Here, Kelmendi has not documented any improper conduct on the part of defense counsel. No objections were made by Kelmendi at trial that substantiate such a charge. He instead makes sweeping, unfounded accusations in his appellate briefs that defense counsel instructed their witnesses to lie, that they withheld evidence, and that they engaged in unfair personal attacks on Kelmendi. These claims appear to be totally unsupported by the record. We therefore conclude that no unfair prejudice has been shown.

## III. CONCLUSION

For all of the reasons set forth above, we AFFIRM the judgment of the district court.