**Judith GODEN, Plaintiff,**

v.

**Marvin T. RUNYON, Postmaster General, Defendant.**

No. 93–2356H/A.

United States District Court,
W.D. Tennessee,
Western Division.

April 20, 1995.

C.B. Weiser, Germantown, TN, for plaintiff.

Harriett Miller Halmon, Asst. U.S. Atty., Roy J. Rector, U.S. Postal Service, Memphis, TN, for defendant.

## ORDER GRANTING JUDGMENT
## TO PLAINTIFF

HORTON, District Judge.

This case presents a claim pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 633. Plaintiff, Judith Goden, alleges that Defendant, Marvin T. Runyon Postmaster General acting through the Regional Chief Inspector denied Ms. Goden a promotion to the position of Investigative Program Analyst because of her age. Ms. Goden was over age 40 at the time and within the protection of the ADEA. Employee Jo Skiles, who was selected for promotion was under age 40. Ms. Goden charges she was discriminated against because of her age and age was the determinant factor that barred her promotion. The Court grants judgment to Ms. Goden.

## FINDINGS OF FACT

In February, 1992 the Postal Inspection Service, Southern Region issued a vacancy announcement for the position of Investigative Program Analyst ("IPA"), which had a grade level of EAS–15. Ms. Goden applied for the position and at the time, she was a Level 14 Personnel Assistant. Ms. Jo Skiles also applied for the IPA position. At the time she was a Level 11 Operations Support Specialist. Evidence showed that Ms. Goden had 19 years of experience with the postal service and Ms. Skiles had been employed by the postal service for 8 years.

Ms. Goden and Ms. Skiles submitted applications for this position along with four other candidates. Ms. Goden and Ms. Skiles were recommended by a Promotion Review Committee over other applicants as best meeting the Vacancy Announcement No. RCI–SR–92–01.

Ms. Goden presented evidence that showed that Joseph M. Kelly, then Regional Chief Inspector and Stephen A. Schmerbeck, the Assistant Regional Chief Inspector attempted to upgrade the position held by Ms. Skiles so that she could be promoted without competition. On cross-examination, Mr. Schmerbeck testified as to why he requested a job evaluation of Ms. Skiles' position from postal service headquarters:

"It was my opinion that the duties being performed by the person in that job were greater than the level that the person that was doing the job was assigned. This was a request for someone who is an expert in the area to review the job for several reasons: One, to find out are the duties listed here, actually duties of the job as a result of doing and onsite review. Second, to determine what level that should be and certainly one of the options would be if they came down and decided that the job should be, for instance, a Level 15, we have—we would have several options ... they could authorize the incumbent in the position to be non-competitively selected if they were found to be performing the full duties of the job. If not, the job would be posted and the person then in the job would have been an applicant for the job." (Transcript "Tr.", p. 315).

In later testimony, Mr. Schmerbeck stated that Postal Headquarters in Washington never responded approving or disapproving his request. Mr. Schmerbeck also testified that he brought up the issue during an administration meeting in San Francisco:

"It was subsequently discussed at an ARCI admin meeting which would have consisted of Mr. Gump, myself, the other four ARCI–Administration and the direct branch managers from national headquarters, budget and personnel and recruitment and training ... As a result of the discussion it was decided rather than creating a new position, the group felt that the types of—the types of duties we were talking about were very similar to a program analyst responsibility, and rather than creating a specific job for recruiting to match our program that was different from the rest of the country, we could simply modify the number of program analyst positions from six to seven." (Tr., p. 254).

Mr. Schmerbeck maintains that after the San Francisco meeting, it was decided that headquarters would approve the creation of a program analyst position for recruitment and training in any region that could justify its use and be allowed to use it. He testified that he returned from the meeting and began

to work up the position of program analyst for recruitment and training.

## Job Requirements

After Mr. Schmerbeck was unable to get Ms. Skiles promoted non-competitively, the evidence shows that he changed the job requirements to fit Ms. Skiles' specific job skills and thereby accomplished his purpose of promoting Ms. Skiles. Mr. Schmerbeck created an Investigative Program Analyst position, EAS–15 specifically for recruitment and training. Mr. Schmerbeck acknowledges that the position in question was created specifically for a person with recruitment and training experience. On cross examination, Mr. Schmerbeck admitted that he changed the job requirements for the Program Analyst position even though the postal service regulations say changes should not be made.

Standard descriptions of job positions are generated by the Agency and regulations prohibited Mr. Schmerbeck from altering the function of the IPA position as defined in the standard position description. On cross examination, Mr. Schmerbeck agreed that the regulations regarding posting of job requirements stated:

"The need for changes is expected to be rare and when necessary, will likely be minor, limited to updating terminology rather than actually changing any basic duties or requirements." (Tr. pp. 303–304)

The evidence shows that the Form 8023 submitted for the position in question did not list Recruiting, Training and/or Planning, nevertheless, the evidence is clear that the Vacancy Announcement for the position in question included requirements in the areas of Recruiting, Training and Planning. The testimony established that Mr. Schmerbeck violated the Agency regulations when he posted a job description that was substantially different than the Requirements Worksheet, PS Form 8023.

Ms. Goden contends that the discrepancy between the Vacancy Announcement and the Form 8023 can be attributed to the efforts of Mr. Kelly and Mr. Schmerbeck to alter the requirements listed on the Vacancy Announcement to show job requirements that would discourage older employees who had not been trained in recruiting, training and planning, from applying for the position. In addition, the alteration in the requirements virtually guaranteed that Ms. Skiles, who had training in these areas would be favored and eventually hired for the position. Witness Stella "Leta" Bishop, testified that when she saw the Vacancy Announcement, she thought it was set up for the person who was doing the job at the time ... Jo Skiles:

"The way it was written did not follow the normal guidelines for the investigative program analyst position, and ... I felt it would be hard for some people to qualify for it. It was the first time that I had ever seen an announcement with the recruitment and training responsibility on the investigative program analyst position." (Tr., p. 33).

## Selecting Official

In addition to the discrepancy in the Vacancy Announcement and the Form 8023, there is also disagreement regarding who was to be the selecting official for the position in question. Mr. Kelly and Mr. Schmerbeck claimed that Mr. Schmerbeck was the selecting official for the position; however, there is evidence to the contrary. Ms. Goden provided documents showing that R.T. Grudek had originally been designated the selecting official but during the selection process, he was subsequently replaced by Mr. Schmerbeck as the selecting official. When questioned about the documents identifying Mr. Grudek as the selecting official, Mr. Schmerbeck simply answered that he "assumed" he was the selecting official. (Tr., p. 290). Ms. Goden claims the change in selecting officials guaranteed that Ms. Skiles would be selected for the position because Mr. Schmerbeck had a preference for Ms. Skiles even before the position vacancy was formally announced.

## Age Related Remarks

Ms. Goden also presented testimony from former Assistant Regional Chief Inspector Bill Goden, her husband, that Mr. Kelly wanted younger employees to administer the Recruitment and Training programs at the Southern Region Headquarters. Mr. Goden testified that Mr. Kelly had made comments

regarding the need for younger employees to work in the recruitment and training areas. Mr. Goden specifically mentioned conversations he had with Mr. Kelly regarding the recruitment program and an older employee, Cliff Vinson: "He indicated to me on several occasions that he wished that Cliff would retire ... he thought the program needed a younger image and more vitality." (Tr., p. 86). Mr. Goden also stated that after Mr. Vinson did retire, he was replaced first by a man in his mid 30's and when that person left the job, a woman in her late forties took the position. Mr. Goden testified that Mr. Kelly was not pleased with the woman, Nancy Miller:

> "He thought Nancy was kind of over they hill and that he didn't think that she projected the ... he believed she didn't have enough time left for career development and that he didn't think she was probably suitable for a position at the region." (Tr., p. 89).

Another witness, June Swindle, an Operations Specialist, testified that age played a role in the selection process, even when she was selected as an Investigative Program Analyst at the age of 33. Ms. Swindle stated:

> "I hadn't been around as long as some of the other ones and they had experience in that area, also, and they had been passed up and I got it over them, and there were some complaints." (Tr., p. 77).

**Training**

Ms. Goden and Ms. Skiles both applied for training. Ms. Goden was allowed to attend training called applicant training, which was training among other things on how to fill out applications. Ms. Skiles, on the other hand, was allowed to attend Panel Subject Matter training as well as applicant training. Ms. Goden testified about why the subject matter training was important:

> "The other training was training for individuals to serve on review panels in order for them to know what kind of questions to ask job applicants, what kind of answers they were looking for, and what kind of responses that they wanted ... Mr. Schmerbeck [said] it would be most benefi-

cial for anybody that was applying for a job because that way you knew the other end of what was going on, you knew what the panel was going to ask, the type of questions they were going to ask, the type of responses that they were looking for, what they were going to outline in their interview, and then as an applicant this training would have been most beneficial for you because you would have known what—what to prepare yourself for, what the panel was looking for." (Tr., p. 151).

On cross-examination, Mr. Schmerbeck admitted that he selected Jo Skiles to attend the training before the promotion, while Ms. Goden did not get to attend Panel Subject Matter training until after the promotion. (Tr., p. 314). Thus, Ms. Skiles was placed in a very advantageous position over Ms. Goden. She learned not only how to prepare an application, but also how the panel of subject matter experts go about their duties of selecting the most qualified person for promotion.

## CONCLUSIONS OF LAW

### Age Discrimination in Employment Act

The purpose of the Age Discrimination in Employment Act, 29 U.S.C. § 621 ("ADEA") is to "promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; to help employers and workers find ways of meeting problems arising from the impact of age on employment." Federal government employees are allowed to file claims of age discrimination pursuant to 29 U.S.C. § 633a(a) which states: "All personnel actions affecting employees ... who are at least 40 years of age ... shall be made free from any discrimination based on age."

To establish a violation of the ADEA, the plaintiff has to prove that "age was a determining factor [in the adverse employment decision]." *Wheeler v. McKinley Enterprises,* 937 F.2d 1158, 1162 (6th Cir.1991). The Sixth Circuit Court of Appeals has held that in ADEA cases, the shifting burdens of proof used in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) should generally be employed. *Os-*

borne v. Brandeis Machinery and Supply Corp., 1994 WL 486628 *2 (6th Cir. Ky.), (citing Barnes v. GenCorp, Inc., 896 F.2d 1457, 1464 (6th Cir.), cert. den., 498 U.S. 878, 111 S.Ct. 211, 112 L.Ed.2d 171 (1990)).

**Burdens of Proof**

The burden is first upon the plaintiff to establish by a preponderance of the evidence a prima facie case of age discrimination. The burden then shifts to the employer to offer a neutral and non-discriminatory reason for the employee's non promotion. Once the employer meets this burden, the employee, if he or she wishes to prevail, must then come forward with proof that the asserted reason is actually a pretext for discrimination. *Id.*

"There is a clear rule in this circuit that age discrimination cases are to be decided on a 'case by case basis'. While this circuit allows the use of a modified version of the criteria set forth in *McDonnell Douglas ...* a mechanistic application of *McDonnell Douglas* has been explicitly discouraged." *Wanger v. G.A. Gray Co.,* 872 F.2d 142, 144 (6th Cir.1989).

Under the modified *McDonnell Douglas* test, in order to establish a prima facie case Ms. Goden would have to show (1) she is a member of the protected class, (2) she received an adverse employment action, (3) she was qualified, and (4) she was replaced by a younger person. It is clear that Ms. Goden established a prima facie case of age discrimination. She was over age 40 when she applied for the promotion, she was determined by the Agency to be qualified for the promotion, and Ms. Skiles an employee under age 40 received the promotion instead of Ms. Goden who was equally qualified.

Once the prima facie case is established, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. A defendant meets its burden if it "clearly set[s] forth, through introduction of admissible evidence, the reasons for the plaintiff's [discharge]". *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 255, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). It is not necessary that a defendant persuade the court that "it was actually motivated by the proffered reason." *Id.* at 254–55, 101 S.Ct. at 1094.

■ In this case, Defendant states that Ms. Skiles was better qualified for the promotion than Ms. Goden. Mr. Schmerbeck testified that Ms. Skiles had "recent extensive work" in recruitment and training, and he stated that because Ms. Skiles had been "repeatedly recognized in this area, that she was better qualified for the job."

Once the employer articulates a legitimate, nondiscriminatory reason for its action, any presumption of discrimination drops from the case, and the burden of persuasion rests squarely on the plaintiff. *Wilson v. Firestone Tire & Rubber Co.,* 932 F.2d 510, 514 (6th Cir.1991). The employee could carry this burden "either directly by persuading the [trier of fact] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. *Id.* There are three ways in which [an ADEA plaintiff can show] that [the] stated reason for [the failure to promote] constituted pretext: (1) by showing that the stated reasons had no basis in fact, (2) by showing that they were not the actual reasons, and (3) by showing that they were insufficient to explain the [adverse employment action.]" *Wheeler,* 937 F.2d at 1162 (citing *Chappell v. GTE Products Corp.,* 803 F.2d 261, 266 (6th Cir.1986)).

■ Ms. Goden presented testimony showing that the reasons the defendant awarded the promotion to Ms. Skiles rather than to her were pretextual. Mr. Schmerbeck stated that Ms. Skiles was better qualified than Ms. Goden for the position in question. The evidence showed, however, that the qualifications for the job were skewed in favor of Ms. Skiles. Mr. Schmerbeck admitted that he felt Ms. Skiles was doing higher level work than she was being paid for. He also acknowledged that he changed the qualifications for the Investigative Program Analyst position, in violation of postal service regulations, to fit Ms. Skiles' skills. Employee Stella Bishop testified that the change in the job requirements discouraged older employees from applying for the position because it

appeared that Ms. Skiles was pre-selected for the promotion.

Ms. Skiles also received "panel subject matter training" before she was interviewed for the promotion. This training, which Ms. Goden applied for but was refused, gave Ms. Skiles insight into the selection process. Ms. Goden testified that the training told applicants what types of questions would be asked, and what kind of answers the panel would be seeking. Ms. Goden also presented evidence showing that younger workers were favored over older employees for positions in the recruitment and training area.

In light of the preferential treatment given to Ms. Skiles, as well as the manipulation of the job requirements to favor her for the promotion, this Court finds that the reasons given by the defendant for promoting Ms. Skiles rather than Ms. Goden are most certainly pretextual. Ms. Goden never had a chance to compete on an equal basis for the position against Ms. Skiles. Therefore, given the credible witnesses who testified on behalf of Ms. Goden, and the evidence establishing that the decision to promote Ms. Skiles was motivated by age, this Court finds that Ms. Goden has carried her burden of showing that the employment decision here was motivated by impermissible reasons, that being the fact of her age and disparate treatment.

**Disparate Treatment**

Ms. Goden has also established disparate treatment in this case.

> "Disparate treatment ... is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion [or other protected characteristics]. Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment ..."

*Hazen Paper Co. v. Biggins,* — U.S. —, —, 113 S.Ct. 1701, 1705, 123 L.Ed.2d 338 (1993). "The disparate treatment theory is available under the ADEA, as the language of that statute makes clear. 'It shall be unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against an individual with respect to his compensation, terms conditions, or privileges of employment, because of such individual's age.'" *Id.* at —, 113 S.Ct. at 1706.

In a disparate treatment case, liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision. *Id.* at —, 113 S.Ct. at 1706 (citing *United States Postal Service Bd. of Governors v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983)). The employer may have relied upon a formal, facially discriminatory policy requiring adverse treatment of employees with that trait. *Id.* (Citing *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985)). Or the employer may have been motivated by the protected trait on an ad hoc, informal basis. *Id.* "Whatever the employer's decisionmaking process, a disparate treatment claim cannot succeed unless the employee's protected trait actually played a role in that process and had a determinative influence on the outcome." *Hazen Paper,* at —, 113 S.Ct. at 1706.

It is clear that age played a definite role in Defendant's decision making process. The evidence showed that Mr. Kelly had expressed a preference to have younger employees in the recruiting and training area. Mr. Kelly and Mr. Schmerbeck first attempted to have Ms. Skiles' job upgraded, which would have in effect promoted her without competition. When that attempt failed, they changed the job requirements on the Vacancy Announcement to favor Ms. Skiles and to discourage older employees from applying for the promotion. In order to insure that Ms. Skiles would get the promotion, the defendants changed the selecting official. Mr. Grudek, who had been named as the selecting official was replaced by Mr. Schmerbeck as the selecting official during the promotion process.

All of this unusual maneuvering leads the Court to one conclusion. The postal officials had preselected a younger employee for the promotion, and they failed to promote Ms. Goden because of her age. As between these two similarly situated employees, Ms. Goden was treated differently because of her age. Therefore, Defendant is liable not only on the

claim of age discrimination but also under the theory of disparate treatment.

### Willfulness

■ Section 7(b) of the ADEA, 29 U.S.C. § 626(b), provides that the rights created by the Act are to be "enforced in accordance with the powers, remedies, and procedures" of the Fair Labor Standards Act. *Thurston,* 469 U.S. at 123–25, 105 S.Ct. at 623. Congress, however, declined to incorporate into the ADEA several FLSA sections. "Moreover, § 16(b) of the FLSA, which makes the award of damages mandatory, is significantly qualified in ADEA § 7(b) by a proviso that a prevailing plaintiff is entitled to double damages 'only in cases of willful violations.' " 29 U.S.C. § 626(b). *Id.* The *Thurston* Court upheld the Court of Appeals finding that a violation is "willful if the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." *Id.* at 128, 105 S.Ct. at 625. The United States Supreme Court upheld the *Thurston* standard for willfulness in *Hazen Paper,* —— U.S. at ——, 113 S.Ct. at 1709.

Viewing the foregoing findings of fact, it is obvious the employer in this case showed a knowing and reckless disregard for the matter of whether its conduct was prohibited by the ADEA. Here, the employer first attempted to promote Ms. Skiles noncompetitively. When that attempt was thwarted by headquarters, the employer changed the job requirements on the Vacancy Announcement to favor Ms. Skiles; and lastly, the employer guaranteed Ms. Skiles' selection by changing the selecting official so that Mr. Schmerbeck, rather than Mr. Grudek made the final promotion decision.

### Damages

Ms. Goden seeks promotion to the position to which she would have been entitled but for discrimination because of her age and deliberately being treated differently. In addition, she seeks back pay including interest and benefits. Ms. Goden also requests costs and attorneys fees. She also asks that the Court enjoin the defendant from continuing to discriminate against her because of her age.

In light of this Court's finding of age discrimination and disparate treatment on the part of Defendant, this Court will grant Ms. Goden's request for relief. Ms. Goden should be promoted to the position which she lost as a result of Defendant's discriminatory acts. Ms. Goden is also awarded back pay. Ms. Goden is also entitled to liquidated damages because of the Court finds willfulness by the defendant. The Court also awards Ms. Goden costs and reasonable attorneys fees. Lastly, the defendant will be enjoined from further discriminating against Ms. Goden on the basis of her age.

### CONCLUSION

In the Court's view, this case involves blatant age discrimination against Ms. Goden. This was also disparate treatment at its worst. What Mr. Schmerbeck did through his actions was to remove competitiveness from the promotion process and, in effect achieve his objective—to promote Ms. Skiles. He systematically tilted the entire promotional process to favor Ms. Skiles. Ms. Goden, though equally qualified by the selection panel, never had a chance. She was discriminated against because of her age and treated differently by a high ranking postal official and she is entitled to the judgment of this Court. The parties are requested to prepare an order of judgment appropriate for entry in this case within 30 days from the entry of this order. While the Court anticipates this decision will be appealed by the Defendant to the Sixth Circuit Court of Appeals, the Order can be prepared for entry and entered subject to later appellate review.