NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0192n.06
Filed: April 9, 2008

Case Nos. 06-5843, 06-5852

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

KATHY CONNER, )
)
   Plaintiff-Appellant Cross-Appellee, )
)    ON APPEAL FROM THE
v. )    UNITED STATES DISTRICT
)    COURT FOR THE WESTERN
STATE FARM MUTUAL AUTOMOBILE )    DISTRICT OF KENTUCKY
INSURANCE COMPANY, )
)
   Defendant-Appellee Cross-Appellant. )
)
_____ )
)

BEFORE: KEITH, BATCHELDER, and MOORE, Circuit Judges.

ALICE M. BATCHELDER, Circuit Judge. Plaintiff Kathy Conner appeals the district court's grant of summary judgment in favor of Defendant State Farm Mutual Automobile Insurance Company ("State Farm") and the denial of her Rule 59(e) Motion to Alter or Amend the Judgment. Conner brought suit against State Farm, alleging that State Farm violated Kentucky's Civil Rights Act, KY. REV. STAT. § 344.040(1), by discriminating against Conner on the basis of age when State Farm did not accept Conner into its candidate pool for agent positions. State Farm appeals the district court's grant of $8,860.00 in attorney's fees to Conner for State Farm's violation of discovery rules. For the following reasons, we AFFIRM the judgment of the district court.

I. BACKGROUND

Conner began working as an office manager for a State Farm agent in 1981. In October

2002, Robert Teague, the State Farm agent at that time, decided to step down from his position. Conner informed Teague that she wanted to apply for his position as an agent in either the Albany or Burkesville, Kentucky, office.

State Farm had a multi-stage selection process by which it selected a pool of approved candidates who could become State Farm agents. Following a screening phase, selected candidates participated in a panel interview, during which seven panelists evaluated each candidate in light of nine competencies, ranging from "taking charge and leading" to "motive to be a State Farm agent." After the panelists scored the candidate in each of these categories, State Farm transferred the scores and comments onto a single "Group Average Scoring Sheet" — or summary score sheet — and calculated the candidate's average score in each category.

Dan Brooks, one of the seven panelists and State Farm's Vice-President of Agency, then reviewed the summary score sheet for each candidate and, based on both the summary score sheet and his impression of the candidates from the interview, he determined which individuals would continue with State Farm's agent approval process. Because the panelists scored each candidate on a scale of one to five, with five being the best score, an average score below three raised a "red flag." Brooks indicated that, under those circumstances, he would often review an individual's file, but normally he based his decision solely on the interview and the resulting scores.

A candidate who advanced out of the panel interview entered the candidate pool and was eligible to apply for job openings in the State Farm system. Once a person obtained a posting and successfully completed training, the person became an independent contractor agent for State Farm.

Conner and fourteen other candidates went through the screening process and panel interview at the same time. State Farm did not select Conner, who was 47, to enter the approved-candidate

2

pool. Conner learned that the candidates State Farm approved to enter the applicant pool were younger than Conner and that the position in Albany (at the agency where Conner worked) went to Lisa Beard, age 36, and the position in Burkesville went to Wade Flowers, age 35.

Conner's average scores from the panel interview ranged from 1.6 to 4. Her overall average score for all nine competencies was 2.33. In contrast, Beard outscored Conner in 8 out of the 9 competencies and obtained an overall average score of 3.76. Flowers outscored Conner in all nine competencies and obtained an overall average score of 4.2. The other successful candidates received overall average scores of at least 3.71 up to 4.46. Of the unsuccessful candidates, all but two received overall average scores under 3.0.

Following State Farm's decision, Conner resigned from her position in the Albany office and brought suit against State Farm. State Farm removed the case to federal court citing diversity jurisdiction, and then moved for summary judgment on Conner's age discrimination claim. Initially, the district court found that Conner had established a *prima facie* case of age discrimination and that State Farm had articulated a legitimate explanation for not accepting Conner into its pool of approved candidates. The court denied summary judgment, however, finding that Conner had established a genuine issue of material fact on the issue of pretext. Because the court did not have Beard's and Flowers's score sheets (or the sheets of any other successful or unsuccessful candidate from Conner's applicant pool) from the panel interview, the court determined that it could not review how and why State Farm reached the decision it did.

State Farm filed its trial brief, which the district court treated as a renewed motion for summary judgment, and provided the court with the summary score sheets for all of the candidates interviewed at the same time as Conner. The court then granted summary judgment in favor of State

3

Farm, finding that Conner had not provided evidence from which a jury could find that State Farm's articulated reason for not selecting Conner was pretextual. Conner subsequently filed a motion to alter the judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. The district court denied the motion. The district court, however, granted Conner's motion for attorney's fees based upon State Farm's failure to provide the candidates' summary score sheets earlier in discovery. Conner timely appealed the grant of summary judgment in favor of State Farm and the court's denial of her Rule 59(e) motion. State Farm timely appealed the district court's award of attorney's fees to Conner.

## II. ANALYSIS

### A. Age Discrimination Claim

We review *de novo* the district court's grant of summary judgment. *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 506 (6th Cir. 2006). "Summary judgment is proper if the evidence, taken in the light most favorable to the nonmoving party, shows that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law." *Macy v. Hopkins County Sch. Bd. of Educ.*, 484 F.3d 357, 363 (6th Cir. 2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); FED. R. CIV. P. 56(c)).

Kentucky's Civil Rights Act provides that it is unlawful for an employer "[t]o fail or refuse to hire, . . . or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's . . . age forty (40) and over." KY. REV. STAT. § 344.040(1). Kentucky courts apply the *McDonnell Douglas* burden shifting framework, *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), when the plaintiff seeks to establish discrimination through circumstantial evidence. *See Williams v. Wal-Mart Stores,*

*Inc.*, 184 S.W.3d 492, 495 (Ky. 2005).

The parties do not dispute that Conner established a *prima facie* case of age discrimination or that State Farm articulated a legitimate, non-discriminatory basis for its decision not to select Conner as an approved candidate. The issue before us is whether Conner presented evidence sufficient to permit a jury to find that State Farm's stated basis for eliminating her from its selection process was pretext for unlawful age discrimination. Conner can demonstrate pretext by showing that State Farm's reasons for not selecting her as an approved candidate "(1) had no basis in fact, (2) did not actually motivate its [challenged] conduct, or (3) were insufficient to warrant the challenged conduct." *Browning v. Dep't of the Army*, 436 F.3d 692, 695 (6th Cir. 2006); *Williams*, 184 S.W.3d at 497. Conner must, therefore, "set forth evidence from which a reasonable juror could reject [State Farm's] explanations for its failure [to select Conner as an approved candidate] and infer that [State Farm] instead made its decision on the basis of [Conner's] age." *Browning*, 436 F.3d at 696.

Conner attempts to show pretext by (1) establishing that she is more qualified than Beard or Flowers; (2) providing statistical evidence demonstrating that State Farm discriminates against older applicants; (3) alleging that State Farm engaged in preferential treatment of the younger applicant Beard; and (4) arguing that Brooks failed to rely on objective criteria in reaching his decision as to who advanced on to the approved-candidate pool. After reviewing the record as a whole, we conclude that the district court did not err in finding that Conner failed to demonstrate pretext.

First, to establish that she is more qualified than Beard or Flowers, Conner cites her 20 plus years of experience working in the insurance industry. She concedes, however, that because State Farm did not require past State Farm or even relevant industry experience in order to be considered for the approved-candidate pool, her past experience was not critical to the application process. She

also relies on several affidavits that her former work colleagues submitted on her behalf. In each affidavit, the affiant rates Conner based on the same competencies considered during the panel interview. Her former colleagues all gave Conner much higher marks than the ones she actually received at the panel interview. Conner, however, offers no evidence to substantiate her claim as to her qualifications beyond her own beliefs (and those of her former colleagues, none of whom worked for State Farm in an evaluative position). But Conner's "subjective view of [her] qualifications in relation to those of the other applicants, without more, cannot sustain a claim of discrimination." *Briggs v. Potter*, 463 F.3d 507, 516 (6th Cir. 2006) (internal punctuation and citation omitted); *see also Kentucky Ctr. for Arts v. Handley*, 827 S.W.2d 697, 701 (Ky. Ct. App. 1991) (a plaintiff's belief as to her qualifications is not relevant; rather, the inquiry is whether the plaintiff established that "discriminatory intent" motivated the defendant's decision).

Second, Conner argues that the statistical evidence she presented before the district court establishes State Farm's discriminatory intent. The statistical analysis considered an applicant pool of approximately 2,500 applicants for State Farm agency positions in Ohio, Kentucky, and Tennessee, and, according to Conner, established that State Farm hired more under-40 non-State Farm employees than over-40 non-State Farm employees.[1]

"Appropriate statistical data showing an employer's pattern of conduct toward a protected class as a group can, if unrebutted, create an inference that a defendant discriminated against individual members of the class." *Barnes v. GenCorp, Inc.*, 896 F.2d 1457, 1466 (6th Cir. 1990). To create such an inference, however, "the statistics must show a significant disparity and eliminate

_____

[1]Although Connor worked as an office manager in Teague's office, she was not a State Farm employee, and so she falls into the over-40 non-State Farm employee category.

the most common nondiscriminatory explanations for the disparity." *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 622 (6th Cir. 2006) (quoting *Barnes*, 896 F.2d at 1466). Conner's statistical analysis does little to support her position because (1) it fails to eliminate the most common nondiscriminatory explanations for the disparity, such as differences in skills or education, and (2) the analysis is not limited to decisions made by Dan Brooks — the primary decision-maker here. The data does not support an inference that State Farm discriminates against persons 40 and over.

Third, Conner argues that State Farm undertook preferential treatment to aid Beard, one of its younger applicants. After the selection process began, Beard met separately with Ralph Dillahay, who participated in the panel interviews, and with Teague. Both Dillahay and Teague recommended that Beard view tapes of a motivational speaker, presumably to help prepare Beard for the panel interview. Conner, however, has offered no evidence that *Brooks*, the decision-maker here, gave any preferential treatment to Beard. Even though Beard received some help from Dillahay and Teague, this treatment does not establish that State Farm's decision not to select Conner, or the other six unsuccessful candidates — all of whom were under the age of 40 — was motivated by unlawful discrimination.

Finally, Conner argues that the district court improperly made two factual findings that should have gone to a jury, namely, that State Farm's business decision not to hire Conner was based on "objective criteria" and that State Farm's business judgment here was reasonable.

We agree that State Farm's hiring process was subjective, rather than objective, but this does not mandate reversal. While we have recognized that "subjective evaluation processes intended to recognize merit provide ready mechanisms for discrimination," they "are not illegal per se." *Grano v. Dep't. of Dev.*, 699 F.2d 836, 837 (6th Cir. 1983). Rather, "[t]he ultimate issue in each case is

7

whether the subjective criteria were used to disguise discriminatory action." *Id.* (citing *Ramirez v. Hofheinz*, 619 F.2d 442, 446 (5th Cir. 1980)). In fact, "[q]uestioning [the decision-maker's] hiring criteria is not within the province of this court, even if [the decision-maker's] hiring process was entirely subjective." *Browning*, 436 F.3d at 698. Additionally, Kentucky courts have also concluded that an employer retains discretion in choosing among qualified candidates, and subjective factors, such as "[a]ttitude, commitment to the work, flexibility, and other nondiscriminatory criteria are legitimate reasons for failure to hire . . . an individual." *Handley*, 827 S.W.2d at 700 (citing *Jackson v. Pepsi-Cola, Dr. Pepper Bottling Co.*, 783 F.2d 50 (6th Cir. 1986)). While Conner understandably dislikes the selection process State Farm used, she offers no evidence to establish that State Farm, through its subjective criteria, acted with a discriminatory motive or that its subjective criteria disguised discriminatory action.

Conner also argues that the district court overstepped its bounds by examining the reasonableness of State Farm's business decision as to Conner and concluding that it was in fact reasonable. While "[a]n employer's business judgment . . . is not an absolute defense to unlawful discrimination[,] . . . . the reasonableness of an employer's decision may be considered to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003). That is, the district court cannot simply invoke the business judgment rule "to exclude consideration of evidence relevant to the question of pretext." *Id.* at 577; *see also Simms v. Okla. ex rel. Dep't. of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1330 (10th Cir. 1999) ("Our role is to prevent unlawful hiring practices, not to act as a 'super personnel department' that second guesses employers' business judgments."). Despite Conner's quarrel with the district court's

finding of reasonableness, we conclude that the district court undertook the proper analysis and considered whether Conner proffered any evidence to rebut State Farm's non-discriminatory reason for not moving her into the next phase of the hiring process, and simply found that Conner produced no evidence from which a reasonable jury could conclude that State Farm's proffered reason constituted a pretext for illegal age discrimination. Our review of the record persuades us that the district court was correct. The district court did not err in granting summary judgment to State Farm.

**B.      Rule 59(e)**

"Ordinarily, we review a denial of a motion to alter or amend a judgment, pursuant to Federal Rule of Civil Procedure 59(e), for abuse of discretion [;] . . . . [w]hen, however, a Rule 59(e) motion seeks reconsideration of a grant of summary judgment, we conduct *de novo* review." *Hansmann v. Fid. Invs. Institutional Servs. Co.*, 326 F.3d 760, 766-67 (6th Cir. 2003) (internal punctuation and citations omitted). A district court may grant a Rule 59(e) motion to alter or amend a judgment if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice. *See Gencorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999).

In her motion to alter, Conner argued that the district court could not have viewed the facts in a light favorable to the non-moving party because the court concluded that State Farm's "methods to interview the candidates were fair and impartial." Further, Conner contended that the court did not properly consider all of Conner's circumstantial evidence of discrimination when the court concluded that State Farm exercised a legitimate business decision in not advancing Conner to the applicant pool. Conner also questioned the district court's reliance on several cases concerning how the court should address State Farm's business decision.

9

We affirm the district court's denial of Conner's 59(e) motion. While the district court's statement that State Farm's interview methodology was fair and impartial suggests a weighing of the evidence inappropriate at the summary judgment stage, we reiterate our previous conclusion that Conner failed to present evidence sufficient to permit a jury to find that this business decision was a pretext for unlawful age discrimination. Moreover, Conner's argument that the district court should have reconsidered the circumstantial evidence she offered is not a proper basis upon which to alter or amend a judgment. Finally, the district court did not err in considering the cases which it cited in its opinion.

## C.    Attorney's Fees

State Farm appeals the district court's award of attorneys' fees to Conner pursuant to Federal Rule of Civil Procedure 37 for State Farm's failure to provide timely discovery. We review such a sanction for abuse of discretion. *Beil v. Lakewood Eng'g & Mfg. Co.*, 15 F.3d 546, 551 (6th Cir. 1994). "An abuse of discretion occurs when (1) the district court's decision is based on an erroneous conclusion of law, (2) the district court's findings are clearly erroneous, or (3) the district court's decision is clearly unreasonable, arbitrary or fanciful." *Id.* The record before us does not support the conclusion that the district court clearly erred in its findings of fact regarding discovery, or that the district court's decision is based on any erroneous conclusion of law or is unreasonable or arbitrary. We find no abuse of discretion here.

## III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** in its entirety the judgment of the district court.

**KAREN NELSON MOORE, Circuit Judge, dissenting in part and concurring in part.**

I write in dissent because I believe that Conner has created a genuine issue of material fact that State Farm's proffered legitimate rationale for not advancing her to the insurance-agent candidate pool was a pretext for age discrimination. I also think that Conner has presented evidence sufficient for a reasonable factfinder to conclude that she has proven her case under a mixed-motive standard of analysis. I concur in Part II.C. of the majority opinion and agree that the district court did not abuse its discretion in awarding attorney's fees to Conner.

## I. GENUINE ISSUE OF MATERIAL FACT REGARDING PRETEXT

Conner has presented statistical evidence of age bias in State Farm's hiring practices as well as circumstantial evidence regarding the subjective character of State Farm's hiring procedures, the preferential treatment shown a younger employee in competition for the jobs she sought, and her own qualifications. "Generally, at the summary judgment stage, a plaintiff's burden is merely to present evidence from which a reasonable jury could conclude that the plaintiff suffered an adverse employment action 'under circumstances which give rise to an inference of unlawful discrimination.'" *Macy v. Hopkins County Sch. Bd. of Educ.*, 484 F.3d 357, 364 (6th Cir.), (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)), *cert. denied*, --- U.S. ---, 128 S. Ct. 201 (2007). The same standards of interpretation apply to Kentucky's Civil Rights Act, KY. REV. STAT. § 344.040(1), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. *Ammerman v. Bd. of Educ.*, 30 S.W.3d 793, 797-98 (Ky. 2000). In this case, enough evidence exists for a reasonable factfinder to conclude that State Farm discriminated on the basis of age when it declined to allow Conner to advance to the candidate pool.

The majority opinion and I agree that Conner has established a prima facie case of age

11

discrimination; we differ on the issue of pretext. To prove pretext, Conner must show that State Farm's proffered legitimate reasons for failing to advance her as a candidate "had no basis *in fact*;" "did not *actually* motivate" State Farm's decision; or "were *insufficient* to motivate" the decision. *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). Here, Conner argues under the second method of demonstrating pretext that her age, and not State Farm's belief that Beard was more qualified than she, explains her lack of success in the application process. Conner must "indict the credibility of [her] employer's explanation by showing circumstances which tend to prove that an illegal motivation was *more* likely than that offered by the defendant." *Id.*

Under both Kentucky and Sixth Circuit precedent, a plaintiff may use statistics to show that an employer's proffered rationale for an adverse employment action is a pretext for discrimination. *Kentucky Ctr. for the Arts v. Handley*, 827 S.W.2d 697, 701 n.5 (Ky. Ct. App. 1991); *Tinker v. Sears, Roebuck & Co.*, 127 F.3d 519, 524 (6th Cir. 1997). "Statistical evidence is an important tool for placing seemingly in-offensive employment practices in their proper perspective." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 527 (6th Cir.), *cert. denied*, 429 U.S. 870 (1976). To serve this function, "both the methodology and the explanatory power of the statistical analysis must be sufficient to permit an inference of discrimination." *Simpson v. Midland-Ross Corp.*, 823 F.2d 937, 944 (6th Cir. 1987) (quoting *Segar v. Smith*, 738 F.2d 1249, 1274 (D.C. Cir. 1984)).

To demonstrate a "pattern of conduct toward a protected class as a group [people over forty]," Conner's evidence must be sufficiently powerful to "create an inference that [State Farm] discriminated against [an] individual member[] of the class." *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 622 (6th Cir. 2006), *cert. denied*, --- U.S. ---, 127 S. Ct. 2100 (2007). "[T]he statistics must show a *significant disparity* and eliminate the most common nondiscriminatory explanations

for the disparity." *Id.* (quoting *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1466 (6th Cir.), *cert. denied*, 498 U.S. 878 (1990)). I think that the statistical research conducted by Conner's expert meets this standard. Of the total candidates for the position of State Farm agent, those applicants over the age of forty were only half as likely to be successful as applicants under the age of forty. J.A. at 217 (Friedlander Rpt. Table 1). Candidates over forty who were not State Farm employees at the time of their applications—the category to which Conner belongs—were sixty-seven percent as likely as candidates under the age of forty to be successful.[2] J.A. at 219 (Friedlander Rpt. Table 3).

The majority opinion concludes that the evidence failed to eliminate nondiscriminatory reasons for the disparity, such as a difference in skills that happens to correlate with age. State Farm, however, has provided no explanation for the disparity. Therefore, a factfinder reasonably could conclude that age bias explains the disparity. *Cf. Barnes*, 896 F.2d at 1469 (holding that a defendant could counter statistical evidence used to establish a prima facie case by challenging the statistical method, by attacking the logic of the presumption that discrimination explains the statistical disparity, or by demonstrating "that bias did not play a role in the particular decision to discharge each of the plaintiffs"). Given that State Farm has not offered an alternative explanation for the age disparity in its hiring results, "it is reasonable to presume . . . that skill is distributed randomly over any given age group." *Id.* at 1466. The statistical evidence does not suffer from any of the common flaws we have identified in other cases, such as too small a sample size. *Cf. Simpson*, 823 F.2d at 943 (finding "suspect" a plaintiff's reliance on a seventeen-person sample pool). The statistical evidence, combined with the other evidence Conner presents, thus creates an inference of

_____

[2]The expert also compared the success rates of candidates who were State Farm employees at the time of their applications, J.A. at 218 (Friedlander Rpt. Table 2), but this evidence is not directly applicable because Conner does not belong to this category.

13

discrimination.

Conner also points to the subjective nature of the criteria that State Farm uses to hire insurance agents. Although "[s]ubjective employment evaluations . . . are not illegal per se," in *Grano v. Department of Development* we "noted that subjective evaluation processes intended to recognize merit provide ready mechanisms for discrimination." 699 F.2d 836, 837 (6th Cir. 1983). In *Grano*, we reviewed the district court's factual findings underlying its conclusion that the employer had not discriminated on the basis of sex for clear error; in this case, we are reviewing the grant of summary judgment to State Farm de novo. While we cannot question State Farm's hiring criteria, I believe that Conner has presented sufficient evidence for a reasonable factfinder to conclude that State Farm "used subjective criteria to mask a discriminatory motive." *See Browning v. Dep't of Army*, 436 F.3d 692, 698 (6th Cir. 2006). The majority opinion concludes otherwise, but mistakenly looks to Conner's discussion of the subjective criteria to determine whether that evidence can independently establish discriminatory motive. Instead, I think that evidence regarding State Farm's subjective hiring process must be viewed in conjunction with the statistical evidence showing an age disparity in the results of that process, as well as evidence that State Farm showed preferential treatment toward Conner's younger competitor. From that perspective, the evidence regarding State Farm's subjective criteria helps to create a genuine issue of material fact with respect to pretext.

The majority opinion dismisses Conner's evidence of the preferential treatment that Dillahay and Teague showed Beard on the basis that Conner did not also show that Brooks exhibited the same preferential treatment. Brooks was certainly the final decisionmaker regarding whether an applicant made it to the candidate pool; however, Brooks depended on the rating scores given Conner by Dillahay and other interviewers. J.A. at 65-66 (Brooks Dep. at 8-12). These interviewers thus

14

constituted initial decisionmakers in the hiring process. Because of Brooks's reliance on their scoring, the judgment of the initial decisionmakers was equally significant to the final hiring decision as Brooks's own judgment. State Farm argues that these interviewers could not have discriminated on the basis of age because several of them were themselves over forty. Sitting en banc, we have "explicitly rejected," however, "the idea that one member of a group is unlikely to discriminate against another member of the same group." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 574 (6th Cir. 2003) (en banc) (relying on *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998)).

Conner presents evidence that a reasonable factfinder could view as showing that at least one interviewer, as well as Teague, may have favored Beard over Conner because of Beard's younger age. Dillahay invited Beard to his office for a half-hour discussion regarding her application and recommended motivational-speaking instruction videos that could aid her in delivering her business-plan presentation, a critical component of the application process. J.A. at 374-78 (Beard Dep. at 9-13). This kind of selective tutoring of a younger worker in the hiring process, to the disadvantage of an older competitor, can serve as evidence of pretext. *See, e.g.*, *Goden v. Runyon*, 885 F. Supp. 1104, 1108-09 (W.D. Tenn. 1995). In addition, Teague had spoken with Beard well before the hiring process about the possibility of her becoming a State Farm agent. J.A. at 421-22 (Teague Dep. at 12-13). A reasonable factfinder could conclude that Dillahay and Teague had previously identified Beard as a competitive candidate and Conner as a weak candidate. While preselection of a candidate based on that candidate's qualifications does not violate Title VII, "[e]vidence of preselection operates to discredit the employer's proffered explanation for its employment decision . . . [and] is relevant evidence of the employer's motivation." *Goostree v. Tenn.*, 796 F.2d 854, 861(6th Cir.

15

1986), *cert. denied*, 480 U.S. 918 (1987).

Although Conner's subjective view of her own qualifications, without more, cannot substantiate her discrimination claim, *Briggs v. Potter*, 463 F.3d 507, 516 (6th Cir. 2006), Conner also presents evaluations of her performance by other individuals. Teague testified to Conner's competence in performing her duties as office manager, his reliance on her for input regarding personnel decisions and marketing plans, her skill in training new employees, and her receipt of regular performance bonuses. J.A. at 420-21, 423 (Teague Dep. at 8-9, 11-12, 18). In addition, Conner has presented an extremely positive review of her work by State Farm Agent Elwood Ervin, who supervised Conner's field visit as part of her application process. J.A. 97-101 (Career Understanding Evaluation Form). Conner does not have to prove that she was better qualified than Beard for the position of State Farm agent, only that State Farm discriminated on the basis of age in choosing Beard instead of her. *Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989), *overruled on other grounds by* the 1991 Civil Rights Act, Pub. L. No. 102-166, 105 Stat. 1071 (1991).

The district court based its opinion in large part on the doctrine that a consideration of the fairness of an employer's business judgment cannot enter into the evaluation of pretext. *Brocklehurst v. PPG Indus., Inc.*, 123 F.3d 890, 898 (6th Cir. 1997). "An employer's business judgment, however, is not an absolute defense to unlawful discrimination." *Wexler*, 317 F.3d at 576. Indeed, "the reasonableness of an employer's decision may be considered to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation." *Id.* In the instant case, a factfinder could consider the reasonableness of State Farm's proffered rationale along with evidence regarding age disparity in State Farm's hiring, the

16

subjective nature of the hiring process, favoritism shown a younger competitor, and Conner's qualifications. In sum, this is a close case, one "that on its facts could go either way." *See id.* at 578. I therefore think that this is a case that should proceed to trial and that the district court erred in granting summary judgment to State Farm.

## II. ANALYSIS OF CONNER'S CASE UNDER THE MIXED-MOTIVE STANDARD

I think that, upon remand, the district court should consider whether to give the jury instructions respecting a mixed-motive as well as those pertaining to a *McDonnell Douglas* standard. I believe that Conner has created a genuine issue of material fact that age-discrimination was a motivating factor in State Farm's decision not to advance her to the candidate pool, even if State Farm would have made the same decision absent this discriminatory motive. In *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), the Supreme Court first recognized that both legitimate and illegitimate rationales can motivate employment decisions. A plurality opinion held that when a Title VII plaintiff proved that a protected characteristic "played a motivating part in an employment decision, the defendant may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's gender into account." *Id.* at 258.

Congress limited the "same-decision" defense articulated in *Price Waterhouse* when it passed the 1991 Civil Rights Act ("the 1991 CRA"), which amended Title VII, Pub. L. No. 102-166, § 107, 105 Stat. 1071, 1075-76 (1991) (codified at 42 U.S.C. §§ 2000e-2(m) and 2000e-5(g)(2)(B)). Congress passed the 1991 CRA "in an attempt 'to eliminate the employer's ability to escape liability in Title VII mixed-motive cases by proving that it would have made the same decision in the absence

17

of the discriminatory motivation." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 711 (6th Cir. 2006) (internal citation omitted). The 1991 CRA provides "that a plaintiff can raise a mixed-motive Title VII claim by 'demonstrat[ing] that race, color, religion, sex, or national origin was *a motivating factor* for any employment practice, even though other factors also motivated the practice." *Id.* (quoting 42 U.S.C. § 2000e-2m). If an individual proves a mixed-motive claim, then "the employer has a limited affirmative defense that does not absolve it of liability, but restricts the remedies available to a plaintiff . . . [to] include only declaratory relief, certain types of injunctive relief, and attorney's fees and costs." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 94 (2003) (quoting 42 U.S.C. § 2000e-5(g)(2)(B)). "[T]o avail itself of the affirmative defense, the employer must 'demonstrat[e] that [it] would have taken the same action in the absence of the impermissible motivating factor.'" *Id.* at 94-95. In the case of *Desert Palace*, the Supreme Court interpreted the 1991 CRA to provide that "direct evidence of discrimination is not required in mixed-motive cases." *Id.* at 101-02. Because we interpret Kentucky's Civil Rights Act consistently with Title VII, we can apply the mixed-motive standard to cases brought under Kentucky's law using circumstantial evidence.

As I have discussed *supra*, Conner has produced statistical and circumstantial evidence regarding age disparity in State Farm's hiring of insurance agents, the use of subjective criteria in the hiring process, possible pre-selection of a younger competitor, and her own qualifications. I think that this evidence, even if it were insufficient to create a genuine issue of material fact that Conner's age constituted the determinative factor in State Farm's employment decision, suffices to create a factual dispute regarding whether age constituted a motivating factor in State Farm's decision. I therefore believe that the district court's grant of summary judgment to State Farm should be reversed and the case remanded for further proceedings.

18