**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0756n.06

No. 13-2391

**UNITED STATES COURTS OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Oct 01, 2014
DEBORAH S. HUNT, Clerk

ROSETTUS WEEKS,

     **Plaintiff-Appellant,**

v.

STATE OF MICHIGAN, DEPT. OF
COMMUNITY HEALTH,

     **Defendant-Appellee.**

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

---

**BEFORE:**    **CLAY and STRANCH, Circuit Judges; BLACK, District Judge.** [*]

    **CLAY, Circuit Judge.** Plaintiff Rosettus Weeks appeals from the district court's order granting summary judgment to Defendant, State of Michigan Department of Community Health, on Plaintiff's discrimination and retaliation claims. Plaintiff's complaint, which alleges that Defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a) *et seq.* ("Title VII"), arises out of Defendant's decision to appoint Carol Holden ("Holden"), a white female, to the position of Director of the Center for Forensic Psychiatry ("CFP") (hereinafter, "the CFP Director position") in February 2010. Plaintiff alleges that he was not selected for this position on account of his race and national origin, and in retaliation for filing an EEOC complaint and discrimination lawsuit against Defendant in 2008. For the reasons set forth below,

---

[*] The Honorable Timothy S. Black, United States District Judge for the Southern District of Ohio, sitting by designation.

we **REVERSE** the district court's order granting summary judgment to Defendant and **REMAND** the case to the district court for further proceedings.

## BACKGROUND

I.    **PLAINTIFF'S BACKGROUND AND EMPLOYMENT HISTORY**

Plaintiff is a black male from Liberia. He has worked for the State of Michigan since 1984, and has been with the Michigan Department of Community Health since 1988. Plaintiff has a background in management, accounting, and finance, including an MBA from Wayne State University. He is also a licensed CPA.

Plaintiff has held a variety of administrative and managerial roles with the Department of Community Health. Two of these positions are particularly noteworthy: first, Plaintiff worked as Director of the Huron Valley Center from 1999 to 2005 and, second, Plaintiff worked as Director of Walter P. Reuther Psychiatric Hospital ("Walter Reuther Hospital") from June 2006 through June 2008.

II.    **PREVIOUS DISCRIMINATION COMPLAINTS AND LAWSUIT**

This is Plaintiff's second lawsuit against Defendant. The facts and circumstances surrounding Plaintiff's previous litigation are highly relevant to his current lawsuit:

In July 2005, while working in central administration for the Department of Community Health, Plaintiff applied for the position of State Bureau Administrator, a Level 18 position. On September 11, 2005, Cynthia Kelley ("Kelley"), a white female, was selected for the position notwithstanding the fact that Kelley did not meet the minimum requirements for a Level 18 position. Plaintiff filed a Technical Complaint with the Civil Service Commission challenging Kelley's appointment. Kelley was removed from the position after it was determined that she lacked the requisite credentials. Following Kelley's removal from the position, Defendant re-

2

established the position as a Level 17 position and again conducted a selection process to fill it. Kelley was once again selected for the position.

Shortly after Kelley was re-appointed, Plaintiff filed another Technical Complaint challenging Kelley's appointment. This dispute was ultimately settled pursuant to a settlement agreement, reached in May 2006, which provided that Plaintiff would withdraw his Technical Complaint and would be appointed as Director of Walter Reuther Hospital effective June 4, 2006. Plaintiff accepted this role, and worked in this capacity for almost two years.

In May 2008, Defendant once again solicited internal applications for the position of State Bureau Administrator, a Level 18 position. Plaintiff applied, but was not selected. Defendant instead gave the promotion to Kelley, who had by that point achieved the requisite credentials that she had previously lacked for a Level 18 position.

One month later, Plaintiff was reprimanded and laterally reassigned to the position of Division Director of Reimbursement and Revenue Enhancement for the Michigan Department of Community Health after he was accused of improperly handling a patient abuse incident at Walter Reuther Hospital.

In September 2008, Plaintiff filed a charge of discrimination with the EEOC challenging his reprimand and removal from his position at Walter Reuther Hospital, as well as Kelley's selection for the position of State Bureau Administrator. On December 11, 2008, after receiving notice of his right to sue, Plaintiff filed a lawsuit against Defendant in United States District Court for the Eastern District of Michigan, alleging that Defendant unlawfully discriminated and retaliated against him by reprimanding him, removing him from his position as Hospital Director, and selecting Kelley for the position of State Bureau Administrator in May 2008. *Weeks v. State of Michigan*, No. 2:08-CV-15124. The lawsuit survived summary judgment, and

the case proceeded to a jury. Director of the Mental Health and Substance Abuse Administration Michael Head ("Head"), as well as Kelley, and several other individuals testified at depositions or during trial. The jury ultimately found in Defendant's favor, and judgment was entered on March 2, 2011.

### III.   PLAINTIFF'S APPLICATION FOR THE CFP DIRECTOR POSITION

The CFP Director position became vacant in January 2009—about one month after Plaintiff filed his first employment discrimination lawsuit. Kelley and Head (Kelley's direct supervisor) were responsible for supervising and filling this vacant position.

Head and Kelley first sought to fill the vacancy on an interim basis. Kelley selected Holden as the interim Director, and Head sanctioned the appointment. When asked whether he had any involvement in terms of placing Holden in the position of interim Director, Head explained during his deposition: "[Kelley] checked it out with me. She wanted to go this route. . . . I sanctioned it." [R. 14-12, Head Dep. at 8, Page ID 543.] Holden remained interim Director for several months until Defendant was ready to fill the position on a permanent basis.

In December 2009, Defendant changed the official job requirements of the CFP Director position by attaching a so-called Selective Position Requirement ("SPR"), which required "[t]wo years of clinical experience as a Psychiatrist, Psychologist, or Physician." [R. 13-7, Ex. 7, Job Posting, Page ID 144–45.] Prior to December 2009, like other Level 17 and 18 positions, the CFP Director position had officially required that any candidate need only possess a Bachelor's degree and two years of professional managerial experience or specialist experience, or equivalent.

As the district court recognized, "[t]he history of the SPR is important to this case." *Weeks v. Michigan*, 12-CV-11368, 2013 WL 4012796, at *2 (E.D. Mich. Aug. 6, 2013). But the

district court's factual statement omits evidence, and ultimately portrays the evidence in the light most favorable to *Defendant*, rather than construing the facts in the light most favorable to *Plaintiff*, as we are required to do on Defendant's motion for summary judgment. *See Scott v. Harris*, 550 U.S. 372, 378 (2007).

The district court found as a matter of undisputed fact that Head created the SPR and directed Tina Smith to submit the SPR request for approval. *Weeks*, 2013 WL 4012796, at *2–3 (citing [R. 13-18, Ex. 18, Head Dep.]). The district court further found that, after the SPR request was approved, "Head was responsible for changing the CFP Director position description to include the clinical experience requirement eventually found in the SPR." *Id.* at *2. The court noted only in passing that "[t]he SPR was also approved by Kelley, as she is the direct supervisor of all of [D]efendant's hospital directors." *Id.* (citing [R. 13-18, Head Dep. at 12; R. 13-5, Kelley Dep. at 41.]).

The district court's recitation of facts is inaccurate. In fact, Head clearly testified during his deposition that *Kelley* created the SPR, and Head merely rubber stamped it. When asked what his specific role was in terms of creating the SPR, Head replied: "[Kelley] must have [created the SPR] and I must have approved it. . . . I don't remember having a lot of discussion with her about it. . . . I'm guessing I signed off on it." [R. 13-18, Head Dep., at 30–31, Page ID 364.] Head indicated that Kelley also created the Position Action Request officially requesting the SPR, and also drafted the written rationale that accompanied the request. Although Head later clarified that he "agreed with this direction and proposed this direction back in 2008," he ultimately admitted that he did not even know what an SPR was, did not remember discussing the SPR with Kelley or anyone else, and did not know or remember anything about the SPR. [R. 13-18, Head Dep., at 32, Page ID 366.]

After Head signed off on Kelley's SPR request, it was submitted for approval by the Civil Service Commission, an independent entity. SPRs are typically used to narrow educational requirements, such as requiring a Bachelor's degree in a specific major area rather than requiring more advanced educational credentials, so the proposed SPR was "unusual." [R. 14-14, Robinson Dep. at 15, Page ID 567.] Due to the unusual nature of Defendant's request, Human Resources analyst Jeanette Robinson sought approval from her supervisor, Susan Cooper. Cooper, in turn, brought the SPR request to *her* supervisor, Matt Fedorchuk, for further review. After conferring with Fedorchuk, Cooper approved the SPR for the CFP Director position on December 14, 2009.

On January 15, 2010, the permanent opening for the CFP Director position was posted internally within the department. It was classified as a Level 17 State Administrator position, but also contained the additional SPR criteria, requiring "[t]wo years of clinical experience as a Psychiatrist, Psychologist, or Physician." [R. 13-7, Ex. 7, Job Posting, Page ID 144–45.]

The job description reads as follows:

> Position is responsible for the overall planning, direction and day-to-day operation of a state operated mental health hospital/center. Work is performed under executive direction and within general policies and procedures of the Department of Community Health. Responsibilities require employee to exercise extensive independent judgment in developing and implementing approaches to clinical and administrative program administration. The employee is required to plan and direct all aspects of the operation in conformance with general guidelines, clinical standards, policies and law, within the funding authorization provided.

[*Id.*]

Plaintiff applied for the position on February 2, 2010. He was one of seven candidates who applied. The applicant pool was apparently filtered down to two final candidates: Plaintiff and Holden, but Plaintiff was rejected after it was determined that he did not meet the SPR

6

criteria attached to the position. In fact, of the seven applicants, Holden was the only one who met the SPR criteria.

Holden has a Master's Degree and Ph.D. in Clinical Psychology from the University of Michigan. She worked in "progressive positions of responsibility for over twenty-three years at the Forensic Center, beginning as a staff psychologist through Director of Evaluation Services." [R. 13-9, Holden C.V., Page ID 151.] Unlike Plaintiff, Holden did not have any prior experience directing a hospital facility.

On February 22, 2010, Holden was appointed to the CFP Director position.

## IV.    PROCEDURAL HISTORY

Plaintiff filed a Technical Complaint with the Civil Service Commission on February 18, 2010, alleging that the selection process for the CFP Director position—specifically, the inclusion of a Selective Position Requirement ("SPR") demanding two years of clinical experience—was designed to exclude him from consideration for the position. Plaintiff requested that the SPR be revoked and that the appointment process be set aside. On March 12, 2010, the Civil Service Commission denied Plaintiff's grievance for lack of standing; because Plaintiff did not possess the qualifications required to satisfy the approved SPR, he was not deemed to be a "candidate." [R. 14-19, Ex. 19, EEOC Position Letter at 2, Page ID 595.]

Plaintiff appealed to the Employment Relations Board ("ERB"). In a decision dated July 1, 2010, the ERB ruled, in part, that the SPR was "improperly approved" in violation of Civil Service Regulation 4.01, which forbids SPRs to require a more advanced degree than required by the state position level, and that the SPR therefore must be set aside. [*Id.* at 3] The ERB further found that Plaintiff was qualified for the position without the SPR, and was thereby a "candidate" such that he had standing to contest the selection process. [*Id.*] The ERB remanded

7

the case to a Technical Review Officer ("TRO") to address the merits of Plaintiff's complaint, and to determine if the entire selection process should be set aside.

In a decision dated August 26, 2010, the TRO found that, although the SPR was improperly approved, it did not cause a fatal flaw in the selection process such that Holden should be removed from the position after performing "satisfactorily" for six months. [R. 13-12, TRO Decision at 8, Page ID 207.]

On July 26, 2010, Plaintiff filed a charge of discrimination against Defendant with the EEOC. The EEOC declined to pursue the charge, and Plaintiff received notice of right to sue on January 3, 2012. On March 26, 2012, Plaintiff filed a complaint against Defendant in the Eastern District of Michigan, alleging violations of Title VII. On May 1, 2013, Defendant filed a motion for summary judgment. On May 22, 2013, Plaintiff filed a response opposing Defendant's motion for summary judgment, and Defendant filed its reply on June 5, 2013. After conducting a hearing on July 24, 2013, the district court granted Defendant's motion for summary judgment by order dated August 6, 2013. *Weeks v. Michigan*, 12-CV-11368, 2013 WL 4012796, at *9 (E.D. Mich. Aug. 6, 2013). Plaintiff filed a motion for reconsideration on August 20, 2013, which the district court denied on September 19, 2013. Plaintiff timely appealed.

## DISCUSSION

### STANDARD OF REVIEW AND RULE 56(a) FRAMEWORK

Under Fed. R. Civ. P. 56(a), summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine issue of material fact exists when there are disputes over facts that might affect the outcome of the lawsuit. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 389 (6th Cir. 2008).

8

We review *de novo* a district court's order granting summary judgment. *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014). "In reviewing the district court's grant of summary judgment, this Court must view all the facts and the inferences drawn therefrom in the light most favorable to the nonmoving party," which in this case is Plaintiff. *Shazor v. Prof'l Transit Mgmt., Ltd.,* 744 F.3d 948, 955 (6th Cir. 2014). "The ultimate question is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Laster*, 746 F.3d at 726 (quotation marks and citations omitted.)

## ANALYSIS

### I. PLAINTIFF'S DISCRIMINATION CLAIMS

Title VII provides that it shall be unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . ." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may establish a claim of discrimination either by introducing direct evidence of discrimination or by proving inferential and circumstantial evidence that would support an inference of discrimination. *Shazor,* 744 F.3d at 955. Where, as here, the claim is based on circumstantial evidence, we employ the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *See also Tex. Dep't of Community Affairs v. Burdine,* 450 U.S. 248 (1981) (clarifying *McDonnell Douglas* burden-shifting framework).

Under *McDonnell Douglas*, Plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *Laster*, 746 F.3d at 727. If Plaintiff succeeds in making out the elements of a *prima facie* case, the burden of production shifts to Defendant to "articulate some legitimate,

nondiscriminatory reason" for its actions. *Id.* If Defendant satisfies its burden of production, the burden shifts back to Plaintiff to demonstrate that the proffered reason was not the true reason for the adverse action. *Id.*

### 1. *Prima facie* **case**

For the reasons explained by the district court, a reasonable jury could find that the CFP Director position is properly classified as a promotion. "In a failure to promote employment discrimination case, the Sixth Circuit has modified the elements of the test to fit the specific context." *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 240 (6th Cir. 2005) (citing *Nguyen v. City of Cleveland,* 229 F.3d 559, 562-63 (6th Cir. 2000)). To establish a *prima facie* case of discrimination based on failure to promote under *Nguyen*, which is the governing precedent, Plaintiff must show, by a preponderance of the evidence, that: 1) he is a member of a protected class; 2) he applied for and was qualified for a promotion; 3) he was considered for and was denied the promotion; and 4) an individual of similar qualifications who was not a member of the protected class received the job at the time Plaintiff's request for the promotion was denied. *Nguyen,* 229 F.3d at 562–63; *see also White*, 429 F.3d at 240. The "modified . . . elements" set forth in *Nguyen* apply to Plaintiff's claim. *White*, 429 F.3d at 240.

There is no dispute that Plaintiff, a black male from Liberia, is a member of a protected class. Nor is there any dispute that Plaintiff was qualified for the position. The dispute in this case is limited to the fourth element: whether an individual of "similar qualifications" who was not a member of the protected class received the job. This element is a proxy for causation.

In assessing whether Plaintiff has satisfied the fourth element of the *Nguyen* test, we "conduct an independent review of the relative qualifications" of Plaintiff and Holden "based on the evidence presented." *White*, 429 F.3d at 243. In analyzing this element, we make "some

comparison of qualifications . . . but not the sort of close comparison that might include consideration of the employer's evaluation of subjective traits or other details about why the non-protected person was in fact selected over the plaintiff." *Id.* at 242 n.6.

Having independently reviewed the relative qualifications of Plaintiff and Holden, we find that there is, at a minimum, a genuine dispute as to whether Plaintiff and Holden are similarly qualified, and disagree with the district court's determination that Holden was the objectively better-qualified candidate. Holden's 23 years of clinical experience, while certainly impressive, are not directly relevant to the CFP Director position—an administrative position with no clinical responsibilities—and do not compel the conclusion that Holden was the objectively superior candidate for the position. To the contrary, Holden's relative lack of experience in hospital management and administration could lead a jury to conclude that Plaintiff was the superior candidate. Even including her experience as interim Director, Holden had less than one year of experience running a hospital. In contrast, Plaintiff already had eight years of prior experience as a Hospital Director, during which time he performed the exact same job duties and responsibilities associated with the CFP Director position. Moreover, Plaintiff had a strong educational background in management, finance, and accounting. While their relative qualifications were unquestionably different, we cannot say with certainty that one candidate was objectively superior for the CFP Director position. Because a reasonable jury could find that Plaintiff was at least as well-qualified as Holden, Plaintiff has satisfied his burden of proof on the fourth element.

Plaintiff has presented evidence to support the presence of all four elements of the *Nguyen* test. Accordingly, Plaintiff has carried his burden of establishing a *prima facie* case.

## 2. Legitimate, nondiscriminatory reason

Defendant sets forth two arguments that are best understood as providing "legitimate business reasons" for the decision to appoint Holden instead of Plaintiff. First, Defendant contends that "Holden was the strongest applicant and the natural choice to lead the Forensic Center." Def.'s Br. at 25. For the reasons discussed above, we cannot conclude that Holden was, indisputably, the objectively stronger applicant. This is a factual question for a jury to decide.

Normally, we would give some measure of deference to an employer's business judgment in selecting one candidate over another, *see Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 462 (6th Cir. 2004) (emphasizing that the role of federal courts is "to prevent unlawful hiring practices, not to act as a super personnel department that second guesses employers' business judgments") (quotation marks omitted), but in this case, Defendant never exercised any "business judgment;" Holden was selected by default—she was the only candidate who met the invalid SPR requirement. The applicant pool was narrowed from seven candidates to two: Plaintiff and Holden, and Plaintiff was subsequently eliminated for his failure to meet the SPR criteria. The TRO, EEOC, and district court provided *post hoc* rationalizations for Holden's appointment, but Defendant never actually compared the two candidates. Under these facts, there is nothing to implicate any concern over "second guessing" an employer's business judgment.

Defendant next argues that, even if Plaintiff had not been rejected on the basis that he did not meet the SPR criteria, Plaintiff's application would have been rejected because Defendant had in place from 2008 through 2011 a "department-wide policy" requiring Hospital Directors to have clinical experience as a psychiatrist, psychologist, or physician. Defendant claims that

Head created this policy in 2008, and that it was subsequently abandoned in 2011 when Head retired. But Defendant has not produced any reliable evidence that such a policy ever existed. The district court cited Head's deposition testimony as support, but Head never expressly stated that he implemented a formal policy requiring clinical experience. Rather, Head explained that he felt, generally, based on his knowledge and experience, that "clinical direction of a hospital is better than non-clinical direction. . . . All other things being equal, you want to pick a clinical person to be the Director of a hospital. It's not just kind of an arbitrary job." [R.14-12, Head Dep. at 39, Page ID 546.] The key words here are *all other things being equal.* Without knowing how much weight Defendant would have put on Holden's clinical experience, and without any evidence that Defendant actually had a formal policy of requiring clinical experience, we cannot say with certainty that Plaintiff would not have been selected for the job.

### 3. Pretext

Even if Defendant had produced evidence of a formal policy requiring clinical experience, Plaintiff has raised a genuine dispute of fact as to whether the stated reason is pretextual. A plaintiff may establish that a proffered reason is a mere pretext by showing that 1) the stated reason had no basis in fact; 2) the stated reason was not the actual reason; or 3) the stated reason was insufficient to explain Defendant's action. *Scott v. Goodyear Tire & Rubber Co.,* 160 F.3d 1121, 1126 (6th Cir. 1998); *Wheeler v. McKinley Enterprises*, 937 F.2d 1158, 1162 (6th Cir. 1991). Put simply, the pretext inquiry considers whether "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine,* 450 U.S. at 253.

A jury could find Defendant's proffered reason was pretextual because, in addition to having no written evidence of this policy, "the only time this alleged policy was used was when

13

the Plaintiff was rejected for the position in 2010." Pl.'s Br. at 22. The former 30-year incumbent of the position, Bill Meyer, would not have qualified under the newly-established SPR because he did not have a clinical degree or any experience as a clinician. Moreover, Defendant does not typically require its Directors to have a clinical background. Three out of the five Directors do not have clinical backgrounds, including one recent hire. Richard Young, a white male who was hired for the position of Director at Walter Reuther Hospital in April 2013, has only a Bachelor's degree in political science and a Master's degree in health administration. The district court attempted to justify these inconsistencies on the basis of their timing and other circumstances. These justifications are arguments to be made before a jury, not undisputed facts for the purposes of summary judgment. A reasonable jury could believe that the alleged policy requiring clinical experience was a tactical excuse to intentionally exclude Plaintiff from qualifying for the promotion. As Plaintiff notes, Defendant had good reason to believe that Plaintiff would apply for the promotion, and irrefutably knew that Plaintiff lacked a clinical background.

Plaintiff has presented sufficient evidence to raise genuine disputes of material fact. Accordingly, summary judgment on Plaintiff's discrimination claim was improper.

## II. PLAINTIFF'S RETALIATION CLAIM

Title VII also prohibits discriminating against an employee because that employee has engaged in conduct protected by Title VII. *See* 42 U.S.C. § 2000e-3(a). As with a Title VII discrimination claim, a Title VII retaliation claim can be established "either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support an inference of retaliation." *Imwalle,* 515 F.3d at 543. Here, Plaintiff has done the latter. Thus, we analyze Plaintiff's retaliation claim under the familiar burden-shifting framework of *McDonnell Douglas.*

411 U.S. 792. *Id*. at 544.

To establish a *prima facie* case of retaliation under Title VII, Plaintiff must demonstrate that (1) he engaged in activity protected by Title VII; (2) Defendants knew that Plaintiff engaged in the protected activity; (3) Defendant took an action that was "materially adverse" to Plaintiff;[1] and (4) a causal connection existed between the protected activity and the materially adverse action. *Laster*, 746 F.3d at 730. Title VII retaliation claims "must be proved according to traditional principles of but-for causation," which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.*" Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013).

There is no dispute that Plaintiff engaged in protected activity by filing an EEOC complaint in 2009, and by bringing a lawsuit against Defendant, which was pending from December 2008 until March 2011. Nor is there any dispute that Defendant was aware of Plaintiff's protected activity. Furthermore, the district court correctly found that rejecting Plaintiff's application for the CFP Director position is a material adverse action for purposes of his retaliation claim regardless of whether the Court classifies the position as a lateral transfer or a promotion, since "the denial of a transfer opportunity for which he was qualified may dissuade a reasonable worker from making ... a charge of discrimination, and rises above the level of petty slights and minor annoyances." *Weeks v. Michigan*, 2013 WL 4012796, at *7 (quotation marks and citations omitted). The only disputed element of Plaintiff's retaliation claim is causation.

The district court found that Plaintiff failed to make a *prima facie* showing of causation. We disagree. The fact that Kelley—the very individual whose preferential treatment Defendant

---

[1] Alternatively, Plaintiff may show that he "was subjected to severe or pervasive retaliatory [or other discrimination-based] harassment by a supervisor." *Morris v. Oldham County Fiscal Court,* 201 F.3d 784, 792 (6th Cir. 2000).

challenged in an EEOC Complaint and federal lawsuit—was instrumental in selecting Holden over Plaintiff for the position immediately raises some level of suspicion. The deposition testimony establishes that Kelley was not only primarily responsible for selecting Holden for the interim position, but also for creating and formally submitting the SPR, and for ultimately hiring Holden for the permanent position. This entire process took place over the course of a year from January 2009—when Holden was appointed on an interim basis, giving her a leg-up for being permanently selected to fill the role—to December 2009 when the SPR was created and the position was formally posted. Kelley had been removed from her position only a year earlier as a result of Plaintiff's complaint of discrimination, and Plaintiff's lawsuit was still ongoing at the time that Kelley passed over Plaintiff for the position. In the Sixth Circuit, "temporal proximity alone can be enough" to establish causation. *Montell v. Diversified Clinical Services,* 757 F.3d 497, 505 (6th Cir. 2014).

The district court gave hefty consideration to the effect of the Civil Service Commission's independent approval of the SPR on Plaintiff's case. We disagree with the district court's determination that the Civil Service Commission's independent approval of the SPR necessarily breaks the chain of causation. It is true that Jeanette Robinson, Susan Cooper, and Matt Fedorchuk, three individuals in HR who are not alleged to have any discriminatory or retaliatory motive, approved Kelley's SPR request. *See Weeks,* 2013 WL 4012796, at *7. However, subsequent ratification of a seemingly-objective SPR cannot insulate Defendant from liability if the SPR was actually created with discriminatory intent. If Robinson and Cooper had independently *created* the SPR, then their lack of discriminatory or retaliatory intent surely would be dispositive. But where Robinson and Cooper merely failed to realize that the SPR was impermissible, their error does not necessarily break the chain of causation.

16

Finally, inasmuch as Defendant argues that Plaintiff cannot establish causation because Holden was the objectively superior candidate due to her qualifications or Plaintiff's blemished work history, we find that this is a question of fact that is not well suited for summary disposition. It is impossible to say that Holden was *unquestionably* the best candidate for the position; her relative lack of relevant directorial experience could raise a question in a reasonable juror's mind. Excluding Holden's clinical background—for whatever it may be worth—Plaintiff appears to have been the better-qualified candidate. While a jury could find that Holden's clinical background and other qualifications make up for her relative lack of experience compared to Plaintiff, this conclusion is not compelled by the evidence and is improper on summary judgment. Holden was an impressive candidate, to be sure, and it is not difficult to provide a *post-hoc* justification for her appointment; but neither is it difficult to argue that an unbiased employer may have found Plaintiff better suited for the directorship. A reasonable jury could believe that but for Plaintiff's protected activity, Plaintiff would have been selected for the CFP position. Plaintiff has presented sufficient facts to create a genuine dispute of material fact on the element of causation, and has carried his burden of establishing a *prima facie* case of retaliation.

As explained above, there is a genuine factual dispute as to whether or not Defendant's proffered reasons are pretextual. Accordingly, summary judgment was improper on Plaintiff's retaliation claim.

## CONCLUSION

The district court erred in granting summary judgment on Plaintiff's Title VII discrimination and retaliation claims. Viewed in the light most favorable to Plaintiff, the facts are sufficient to create a genuine dispute of material fact as to whether Defendant impermissibly

17

failed to promote Plaintiff because of his race or national origin, or in retaliation for Plaintiff's 2008 employment discrimination lawsuit. Moreover, there is a genuine factual dispute as to whether Defendant's "legitimate business reason" for selecting Holden over Plaintiff was pretextual. Therefore, we **REVERSE** the district court's order granting summary judgment to Defendant on Plaintiff's discrimination and retaliation claims and **REMAND** the case to the district court for further proceedings.